## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RESTORE MEDIA, LLC,<br>1000 Potomac Street, NW, Suite 102<br>Washington, DC 20007,<br><br>       Plaintiff,<br><br>v.<br><br>ROLAND A. LABINE<br>199 Berkeley Place<br>Brooklyn, NY 11217,<br><br>JOHN M. CORBETT, JR.<br>235 State Street<br>Northampton, MA 01060,<br><br>and<br><br>MEETINGHOUSE ENTERPRISES, INC.<br>Registered Agent – John M. Corbett, Jr.<br>One Ferry Street<br>Easthampton, MA 01027,<br><br>       Defendants. | Civil Action No. 07-573 (RJL) |

### DEFENANT ROLAND A. LABINE'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1-3) of the Federal Rules of Civil Procedure, Defendant Roland

A. Labine, by and through his counsel, respectfully moves to dismiss Plaintiff's Verified

Complaint, in its entirety, on the grounds that: (1) this Court lacks subject matter jurisdiction

over Plaintiff's claims; (2) this Court lacks personal jurisdiction over Defendant Roland A.

Labine; and (3) venue is not properly laid in this Judicial District. The grounds for this motion

are set forth more fully in the supporting memorandum of points and authorities filed

contemporaneously with this motion.

Dated: this 9th day of April, 2007        Respectfully submitted,


By: _____ /s/ Kevin M. Kraham _____
          Peter J. Petesch, DC Bar No. 405639
          Kevin M. Kraham, DC Bar No. 459077
          FORD & HARRISON LLP
          1300 19th Street, N.W., Suite 700
          Washington, DC  20036
          Tel  (202) 719-2000
          Fax  (202) 719-2077

          *Attorneys for Defendant Roland A. Labine*


          _____


          Elliott S. Martin
          LAW OFFICE OF ELLIOTT S. MARTIN
          16 Court Street, Suite 2304
          Brooklyn, New York  11241
          Tel  (718) 855-0400
          Fax  (718) 858-2101

          *Of Counsel*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RESTORE MEDIA, LLC,
1000 Potomac Street, NW, Suite 102
Washington, DC  20007,

      Plaintiff,

v.                                                      Civil Action No. 07-573 (RJL)

ROLAND A. LABINE
199 Berkeley Place
Brooklyn, NY  11217,

JOHN M. CORBETT, JR.
235 State Street
Northampton, MA  01060,

and

MEETINGHOUSE ENTERPRISES, INC.
Registered Agent – John M. Corbett, Jr.
One Ferry Street
Easthampton, MA  01027,

      Defendants.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENANT**
**ROLAND A. LABINE'S RULE 12(b) MOTION TO DISMISS**

**I.**
**PRELIMINARY STATEMENT**

      The subject Complaint has serious procedural defects and should be dismissed.  Plaintiff

has not made the necessary factual showing to establish subject matter jurisdiction pursuant to 28

U.S.C. § 1332(a)(1); since it is Plaintiff's burden to plead and prove appropriate jurisdiction, this

failure is fatal and this matter must be dismissed pursuant to Federal Rule 12(b)(1).  Even were

Plaintiff deemed to have established the requisite subject matter jurisdiction, Plaintiff has not

made a *prima facie* showing that DC Code § 13-423 provides a predicate for Plaintiff to assert

personal jurisdiction over the answering Defendant in this Judicial District.  The sole factual

matter presented in support of the motion is found in the Verified Complaint. This pleading fails

to allege any concrete facts about Defendant Roland A. Labine's contacts with the District of

Columbia, much less those which would be sufficient to bring him within the ambit of the

District's Long-Arm statute. In contradistinction to Plaintiff's bare assertion that jurisdiction

over Mr. Labine is proper is Mr. Labine's detailed statement that he never engaged in any

conduct which makes it proper and fair to sue him in the Courts of the District of Columbia.

Without a basis for *in personam* jurisdiction, this action must be dismissed pursuant to Federal

Rule 12(b)(2). Likewise, Plaintiff has failed to assert one single tangible fact to support the

conclusory allegation that "a substantial portion of the events or omissions giving rise to the

claim occurred in this Judicial District." Therefore, Plaintiff has failed to make a *prima facie*

case that venue in this Judicial District is proper; this matter should therefore be dismissed

pursuant to Federal Rule 12(b)(3).

## II.
## <u>BACKGROUND</u>[1]

Roland A. "Clem" Labine is a gentleman with approximately thirty-five (35) years of

experience in the traditional home market. In 1987 Mr. Labine founded two (2) well-regarded

and popular magazines in the field which his corporation eventually sold to Plaintiff along with

two (2) adjunct websites in March 2002. These web sites were not making a substantial profit at

the time of the sale and are not raised as an issue in this litigation. Likewise, there is no

allegation that any present or potential action on Mr. Labine's part will or could affect the

operation of the two magazines. The controversy revolves around a website purchased in

December 2003 from a third-party. Some two (2) years later, Plaintiff "transitioned" this into

---

[1] Unless otherwise noted, the facts set forth herein are supported by the Declaration of Roland A. Labine, attached
hereto as Exhibit 1.

TradWebDirectory.com (hereinafter "TradWeb"), a website which Mr. Labine helped develop towards the end of 2005 and the first half of 2006.

The parties' transaction was structured as an Asset and Liabilities Purchase Agreement ("Asset Agreement") specifically integrated with a separate Employment Agreement between Restore and Mr. Labine. The Employment Agreement contained a non-compete clause. Both the Asset Agreement and the Employment Agreement cross-reference the other; the consummation of the assets transfer was specifically conditioned on the parties' execution of the Employment Agreement which is designated in the contract as a "Related Instrument" which together "contain the entire agreement between the parties." The parties further agreed in the same paragraph (8.5) that the Agreement would be construed according to the laws of the State of New York. The parties signed the contract in Mr. Labine's office in Brooklyn, New York.

From March 1, 2002, through July 31, 2006, Mr. Labine continued in Restore's employ. Towards the end of 2005, he worked to develop TradWeb and get it off of the ground. Mr. Labine concentrated on organizing the website and writing descriptions of each category of home improvements. His annexed Declaration provides definitively that there is nothing which is unique or proprietary about what he did; he also declares that no proprietary sales or marketing strategy existed at Restore during his period of employment.

In January 2007, Mr. Labine entered into preliminary discussions with co-defendant John Corbett about starting a website of their own (RestorationTradesExchange.com) which would compete with TradWeb. Seeking to restrain this competition, Plaintiff commenced the action before this Court.

## III.
## ARGUMENT

**A.    Plaintiff Has Not Alleged A Basis To Establish Subject Matter Jurisdiction**

In *C.P. Carden v. Arkoma Associates*, 494 U.S. 185; 110 S. Ct. 1015; 108 L. Ed. 2d 157

(1990), the United States Supreme Court decreed that for the purposes of determining subject

matter jurisdiction under 28 U.S.C. § 1332(a)(1), the Court must scrutinize the state of residence

of each and every one of the partners of a limited partnership.  Justice Scalia, writing for the

majority, freely admitted the Court's decision could validly be criticized as hyper-technical,

precedent-bound or unrealistic in terms of modern business realities, but ultimately reflected the

intent of Congress to require the unincorporated business entity to allege and prove full diversity

of citizenship of all of its principals.  *See id.* at 196.  While the *Carden* Court addressed the

situation of limited partnerships, numerous subsequent Federal appellate decisions have

addressed jurisdiction over limited liability companies such as Plaintiff herein, and have

employed the same analysis and uniformly produced the same result.

The leading case on this issue is *Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d

(1st Cir. 2006) which explains the genesis of the rule in *Carden* and applies this guideline

directly to limited liability companies:

> The citizenship of an unincorporated entity, such as a partnership,
> is determined by the citizenship of all of its members. *Carden v.
> Arkoma Assoc.*, 494 U.S. 185, 195-96, 110 S. Ct. 1015, 108 L. Ed.
> 2d 157 (1990) (limited partnership).  Neither the Supreme Court
> nor this circuit has yet directly addressed whether that rule also
> applies to limited liability companies. However, every circuit to
> consider this issue has held that the citizenship of a limited liability
> company is determined by the citizenship of all of its members.
> *See Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121
> (4th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dep't
> Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004); *Rolling Greens
> MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022
> (11th Cir. 2004); *Provident Energy Assocs. of Mont. v. Bullington*,

-4-

> 77 Fed. Appx. 427, 428 (9th Cir. 2003); *Homfeld II, LLC v. Comair Holdings, Inc.*, 53 Fed. Appx. 731, 732-33 (6th Cir. 2002); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998); *see also* 13B Charles Alan Wright et al., Federal Practice & Procedure: Juris. 2d § 3630 (Supp. 2005). <u>We see no reason to depart from this well-established rule.</u>

(emphasis added).

And, in the District of Columbia, "Limited liability companies are assigned the citizenship of their members for federal diversity jurisdiction purposes." *Wright v. Herman*, 230 F.R.D. 1, 6 (D.D.C. 2005); *Ulliman Schutte Constr., LLC v. Emerson Process Mgmt. Power & Water Solutions*, No. 02-1987, 2006 U.S. Dist. LEXIS 14897, at *15-16 (D.D.C. Mar. 31, 2006); *Shulman v. Voyou, LLC*, 305 F. Supp. 2d 36, 40 (D.D.C. 2004).

In accord is a recent case in the United States District Court for the District of Kansas. *Friess v. Quest Cherokee, LLC*, No. 06-2573-KHV, 2007 U.S. Dist. LEXIS 9698 (D. Kan. Feb. 9, 2007). In *Friess*, the Court found that to withstand dismissal a pleading must provide the requisite information on each principal's citizenship:

> For the purpose of diversity jurisdiction, however, an LLC is a citizen of each state of which a member is a citizen. The notice of removal does not allege the citizenship of each member of Quest Cherokee and Bluestem Pipeline and it therefore fails to properly allege subject matter jurisdiction. *See Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006); *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Provident Energy Assocs. of Mont. v. Bullington*, 77 Fed. Appx. 427, 428 (9th Cir. 2003); *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 Fed. Appx. 731, 732-33 (6th Cir. 2002); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998); *Maroy v. ISIS, LLC*, No. 06-0776-F, 2006 U.S. Dist. LEXIS 50351, 2006 WL 2056661, at *1 (W.D. Okla. July 21, 2006) . . . .

(remaining citations omitted).

Defendant respectfully refers the Court to Paragraph 3 of Plaintiff's Complaint, which merely pleads that Restore was formed in Delaware and has its principal place of business in the District of Columbia. Were Plaintiff formed as a corporation, this information would be adequate to establish full diversity; however, since Plaintiff is a limited liability company, it was necessary for Plaintiff to allege the identity and residence of each of its members. Without this essential predicate, Plaintiff's Complaint is fatally flawed and must be dismissed.

Defendant further respectfully refers the Court to the Declaration of Roland A. Labine, in which he states his understanding that Restore's national sales manager is a gentleman named Robert Fox, who both is a principal of Plaintiff's and a resident of the State of New York. It is respectfully urged that, if indeed true at the time the litigation was commenced, this would vitiate the full diversity of citizenship needed by Plaintiff to establish subject matter under 28 U.S.C. § 1332 and mandates the dismissal of this action.

**B.      Plaintiff Has Not Alleged A Sufficient Relationship Between Labine And The District of Columbia To Establish Jurisdiction Under The District of Columbia's Long-Arm Statute**

In the matter of *Dooley v. United Technologies*, 786 F. Supp. 65, 71 (D.D.C. 1992), this Court laid out the requirements to obtain jurisdiction over non-District of Columbia residents:

> Section 13-423(a)(1) of the District of Columbia long-arm statute provides that 'a District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's transacting any business in the District of Columbia.' D.C. CODE § 13-423(a)(1). To establish personal jurisdiction under this subsection, a plaintiff must demonstrate that (1) the defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'

-6-

It is the obligation of Plaintiff to assert facts upon which a determination as to proper personal jurisdiction may be made. In *Novak-Canzeri v. HRH Prince Turki Bin Abdul Aziz Al Saud, et al.*, 864 F. Supp. 203, 205 (D.D.C. 1994), this Court held:

> Under the District of Columbia long-arm statute, a plaintiff has the burden of establishing that personal jurisdiction exists by demonstrating a factual basis for the exercise of such jurisdiction over the defendant. *First Chicago Int'l v. United Exchange Co.*, 836 F.2d at 1378; *Crane v. New York Zoological Soc.*, 282 U.S. App. D.C. 295, 894 F.2d 454, 456 (D.C. Cir. 1990); *Dooley v. United Technologies Corp.*, 786 F. Supp. 65, 70 (D.D.C. 1992); *Mitchell Energy Corp. v. Mary Helen Coal Co. Inc.*, 524 F. Supp. 558, 561 (D.D.C. 1981). <u>In attempting to satisfy this burden, a plaintiff may not rest on bare allegations or conclusory statements alone and must make at least a prima facie showing if it is to avoid dismissal for want of jurisdiction.</u> *First Chicago Int'l v. United Exchange Co.*, 836 F.2d at 1378; *Sunlite, Inc. v. BFG Bank AG*, 849 F. Supp. 74, 75 (D.D.C. 1994); *Dooley v. United Technologies Corp.*, 786 F. Supp. at 70. While the long-arm statute is interpreted broadly, <u>Plaintiff must allege some specific facts evidencing purposeful activity by Defendants in the District of Columbia by which they invoked the benefits and protections of its laws.</u> *First Chicago Int'l v. United Exchange Co. Ltd.*, 836 F.2d at 1378-79; *Meyers v. Smith*, 460 F. Supp. 621, 622 (D.D.C. 1978); *Mitchell Energy Corp. v. Mary Helen Coal Co. Inc.*, 524 F. Supp. at 563.

(emphasis added).

Plaintiff's Complaint – the sole factual predicate of this application – makes only the slightest attempt to establish compliance with the long-arm statute through nothing but conclusory statements. It is respectfully urged that Plaintiff has not borne its burden of persuasion to make a *prima facie* case.[2] For a complaint to comply with due-process requirements under the District of Columbia's long-arm statute, there must be some showing

---

[2] See *Abramoff v. Shakes Consulting*, 288 F. Supp. 2d 1 (D.D.C. 2003).

that a Defendant purposefully established minimum contact within the District. As this Court

stated in *Burman v. Phoenix Worldwide Indus.*, 437 F. Supp. 2d 142, 148 (D.D.C. 2006):

> The phrase "transacting any business" in section 13-423(a)(1)
> "embraces those contractual activities of a nonresident which cause
> a consequence here." *Mouzavires v. Baxter*, 434 A.2d 988, 993
> (D.C. Cir. 1981). "[T]he sweep of the 'transacting any business'
> provision . . . covers any transaction of business in the District of
> Columbia that can be reached jurisdictionally without offending
> the due process clause." *Id.* at 992 (citing *Margoles v. Johns*, 157
> U.S. App. D.C. 209, 483 F.2d 1212, 1218 (D.C. Cir. 1973)).
> Therefore, to establish that a court has personal jurisdiction under
> section 13-423(a)(1), a plaintiff must show not only that the
> defendant transacted business in the District of Columbia and that
> the claim arose from the business transacted in the District of
> Columbia, but also "that the defendant had minimum contacts with
> the District of Columbia such that the Court's exercise of personal
> jurisdiction would not offend 'traditional notions of fair play and
> substantial justice.'" *Dooley v. United Techs. Corp.*, 786 F. Supp.
> 65, 71 (D.D.C. 1992) (quoting *Int'l Shoe v. Washington*, 326 U.S.
> 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). The Court must
> examine "prior negotiations and contemplated further
> consequences, along with the terms of the contract and the parties
> actual course of dealing . . . in determining whether the defendant
> purposefully established  minimum contacts within the forum.'"
> *Cellutech v. Centennial Cellular Corp.*, 871 F. Supp. 46, 49
> (D.D.C. 1994) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462,
> 479, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

The essence of Plaintiff's argument can be discerned by referring to its Complaint.

Allegedly, Mr. Labine (who "lives and works in New York", Compl. ¶ 4) contracted with co-

defendants Corbett (who "lives and works in Massachusetts", Compl. ¶ 5) and Meetinghouse

Enterprises, Inc ("a Massachusetts corporation with its principal place of business in

Massachusetts", Compl. ¶ 6) to set up a competing internet company which would reach out to

Restore's "customers, advertisers, and vendors [which] are located throughout the United

States" (Compl. ¶ 12). Assuming, *arguendo*, that this is all true, there are no acts which might

constitute the transaction of business in the District of Columbia or any other necessary

predicate to provide personal jurisdiction. The Complaint did not allege even a single instance

of conduct through which Mr. Labine might be claimed to have purposefully established even

minimal contacts with the District of Columbia. This action, therefore, should be dismissed

pursuant to Federal Rule 12(b)(2).

**C.    Plaintiff Did Not Present Facts Which Support Venue Under 28 U.S.C. § 1391(a)(2)**

Plaintiff relies on 28 U.S.C. §1391 to establish venue. The Statute provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Other than one passing reference to 28 U.S.C. § 1391, which does no more than quote a

portion of the Statute, Restore does not even attempt to make out a case that this matter belongs

in this Judicial District. Its failure to bear its obligation to establish proper venue should

mandate the dismissal of the Complaint. In *Abramoff v. Shake Consulting, LLC*, 288 F. Supp. 2d

1, 3 (2003), this Court stated:

> In this circuit, there is "little case law on the question of where the burden of persuasion lies when a plaintiff's choice of venue is challenged." *Johnson v. Washington Gas Light Co.*, 89 F. Supp. 2d 45, 47 (D.D.C. 2000). Courts in the Fourth Circuit, however, have held that the plaintiff usually bears the burden of establishing that venue is proper. *Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F. Supp. 2d 468, 471 (D. Md. 2002); *Dunham v. Hotelera Canco S.A. de C.V.*, 933 F. Supp. 543, 550 (E.D. Va. 1996); see also 5A FED. PRAC. & PROC. 2d § 1352 (noting that placing the burden on the plaintiff "seems correct inasmuch as it is plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue.")

(emphasis added).

To affirmatively establish venue, Restore needed to do more than restate the language of the Statute in conclusory terms. The Verified Complaint makes absolutely no showing that the requirements of 28 U.S.C. § 1391(a) have been met in any way. The Complaint fails to allege that any single "event or omission giving rise to Plaintiff's claim" occurred in the District of Columbia. In contradistinction, there is the clear and concise Declaration of Roland A. Labine, which indicates declaratively that he did not engage in any actions in the District of Columbia or do anything which purposefully brought him under the jurisdiction of this Court. The statute imposes a burden on Plaintiff to establish that "a substantial part of [relevant] events or omissions" occurred in this Judicial District. Plaintiff has not made out even a *prima facie* case that venue in the District of Columbia is proper. On the record before this Court, it cannot be said that Plaintiff has satisfied its burden to show it has instituted its action in a permissible forum. Therefore, it is respectfully urged that this Court must find that venue is not properly laid in this Judicial District and dismiss the matter pursuant to Federal Rule 12(b)(3).

## IV.
## CONCLUSION

For the reasons set forth above, it is respectfully urged that the subject Complaint is fatally defective in that it does not make out a *prima facie* case against Defendant Roland A. Labine with respect to subject matter jurisdiction or personal jurisdiction or establish that this matter has been properly brought in this Judicial District. Therefore, it is respectfully urged that this Court should use its powers under Federal Rules 12(b)(1-3) to dismiss this action against Roland A. Labine.

Dated: this 9th day of April, 2007          Respectfully submitted,


By: _____ /s/ Kevin M. Kraham _____
    Peter J. Petesch, DC Bar No. 405639
    Kevin M. Kraham, DC Bar No. 459077
    FORD & HARRISON LLP
    1300 19th Street, N.W., Suite 700
    Washington, DC  20036
    Tel  (202) 719-2000
    Fax  (202) 719-2077

    *Attorneys for Defendant Roland A. Labine*

          _____

    Elliott S. Martin
    LAW OFFICE OF ELLIOTT S. MARTIN
    16 Court Street, Suite 2304
    Brooklyn, New York  11241
    Tel  (718) 855-0400
    Fax  (718) 858-2101

    *Of Counsel*

DC:65517.2

# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RESTORE MEDIA, LLC,

      Plaintiff,

v.

                                 Civil Action No. 07-573 (RJL)

ROLAND A. LABINE, *et al.*,

      Defendants.

---

## DECLARATION OF ROLAND A. LABINE

    I, Roland A. Labine, make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746:

    1)    I am over eighteen (18) years of age, have personal knowledge of the facts set forth herein, am competent to so testify, and state that said facts are true.  I live and work in Brooklyn, New York with a residence and home office at 199 Berkeley Place, Brooklyn, New York 11217.

    2)    For the last thirty-five (35) or so years, since 1972, I have worked in the media field relating to traditional homes, old houses, historic preservation and traditional architecture. From 1987 to 2002 I developed and built up two (2) publications, "Clem Labine's Traditional Building" and Clem Labine's Period Homes". I also launched two (2) websites, "traditional-building.com" and "period-homes.com" which essentially were only adjuncts to the magazines, and were not independently profitable. On March 1, 2002, I sold the two (2) magazines and websites to Plaintiff, Restore Media, LLC ("Restore"). I stayed on as a manager of the Brooklyn office until July 31, 2006. Both Restore and I had counsel to advise us in the transaction and the contract was actually executed in my office in Brooklyn with all sides at the same table.

3)    The magazines and websites which were conveyed to Restore in 2002 were all produced out of my office located in a building I owned at 69A Seventh Avenue, Brooklyn, New York. Restore continued operating from this location from March 2002 until late February 2007. At that point, with its Lease expiring, it moved its operation to 45 Main Street, Brooklyn, New York. To the best of my belief, Restore's New York offices have approximately sixteen (16) employees; all of the creative work in laying out the magazines and the preponderance of the sales activities of the two (2) magazines and websites are performed out of the New York office.

4)    In early 2007 I began preliminary discussions with co-Defendant John M. Corbett, Jr. ("Corbett") with an eye to possibly developing a website which would in certain ways overlap with that of Restore's (TradWeb Services directory.com).  My understanding is that anti-competitive covenants against a former employee are strongly discouraged by the Courts and unenforceable unless they involve conduct which the Courts construe as providing an unfair competitive advantage to the former employee.

5)    I possess no commercial information proprietary to Restore. Any necessary information concerning vendors or customers is readily obtainable on the internet or through perusal of trade magazines. If Restore is in possession of trade secrets I certainly am not aware of them.

6)    Plaintiff's Complaint states (at Paragraph 8) that "...the claims in this lawsuit arise from Defendants' actions in the District of Columbia". I assure this Court that since I left I never did anything whatsoever in the District of Columbia relating to Restore or any possible business venture with Corbett or otherwise connected to the historic restoration market.  Any conversations that I had with Corbett took place in Brooklyn, as did any correspondence that I transmitted.  In Paragraph 9 of Plaintiff's Complaint, there is an allegation which refers to

"events or omissions giving rise to the claim"; I submit that I have neither committed any acts nor failed to act in any way which would cause cognizable harm to Plaintiff; however, any conduct which might have conceivably come under that category occurred in New York. I have no purposeful contacts with the District of Columbia whatsoever.

7)     After Restore's purchase of my magazines and websites in March 2002, I stayed on as founder and sales manager of the two (2) magazines and two (2) websites, working out of my Brooklyn, New York office. This constituted the bulk of my duties at Restore until I left in July 2006. Over the last eight (8) or nine (9) months of my tenure at Restore, I did some work on what Plaintiff's Complaint refers to as the "TradWebDirectory.com" website (hereinafter "TradWeb"). While it was not the focus of my efforts, it was certainly something that I devoted time to over that period. However, Plaintiff's Complaint is somewhat mystifying when it states (at Paragraph 22) that I was "privy to all of Restore Media's confidential and proprietary plans for launching TradWebDirectory.com including, but not limited to its market strategy, pricing and philosophy, and Restore Media's database of customers and providers." Unfortunately, this allegation is as incorrect and misleading as it is broad.

8)     If Restore had a particular "market strategy, pricing, and philosophy" behind TradWeb I never was aware of it. Its goal (like pretty much everyone else who starts a commercial website) was to make money and I imagine its generalized strategy was to increase advertising revenue (again which is a standard way to accomplish that goal). I did make two (2) suggestions to Restore to further this "strategy": To list vendors for free but to charge a premium for an expanded text listing and to offer a service by which the vendor could provide the internet consumer an opportunity to click on the screen and see a pictorial image of the vendor's work. TradWeb did not actually exist until John Corbett put up a version on the internet in June 2006.

These sales concepts are hardly unique or proprietary. Nor for that matter is Restore's database of customers and providers. These individual companies and concerns are easily discoverable on the internet or by scanning trade magazines. This is how I developed a database which was conveyed to Restore along with the primary assets in the form of the two (2) magazines. This "strategy" does not require specialized gifts, and can be replicated by anybody who is willing to spend what is not an extraordinary amount of time. Regarding "pricing" of the text listing, I did make suggestions on that score to Restore sometime shortly before I left, but I do not know whether these suggestions were accepted or rejected. The "TradWebDirectory.com" website was commercially launched sometime in 2006 after I left Restore and I know very little about how it has worked out and to what extent it has been successful. I do know that Restore established its initial sales quota for its TradWeb sales staff only in early 2007 (six (6) months after I left). I learned of this from certain of Restore's sales staff who reached out to me asking for help in devising strategies to meet that quota. Apparently, Restore imparted no coherent marketing strategy to these people from its headquarters in Washington. This seems to refute Plaintiff's claim that there was a proprietary sales strategy in place as of July 2006 which I should be restrained from utilizing.

9)    My primary contribution to TradWeb was to organize product listings into categories and write short descriptions of each. Annexed hereto as Exhibit A is a printout of all of the different categories of vendors which appear on the TradWeb website. I hope and believe my prose is serviceable but none of the descriptions are in any way proprietary. I respectfully refer the Court to the site of one of Restore's competitors, "OldHouseWeb" where many of the same categories are described in much the same way. If I were to decide to establish a website which overlaps with TradWeb I would be bringing to the venture nothing which in any

conceivable way should "belong to" Restore. By virtue of spending some time on his or her computer, anyone sitting anywhere in the world could simply replicate the basic information on the Restore website, or for that matter the OldHouse website, including its vendor listings. I respectfully suggest to this Court that there is nothing remotely unfair about my initiating such a venture.

10)    In January 2007, I sent a letter regarding some potential personal plans for a new business. However, it was not a mass-mailing directed to "Restore's clients" *per se*, but to eighty-seven (87) friends with whom I had established relationships over my thirty-five (35) years in the field. I did <u>not</u> utilize any Restore database in the dissemination of this communication. The history of this letter is simple. It came to my attention that individuals at Restore were telling contacts that I had retired from the industry when I left Restore in July 2006. Since that was not true, I sent a letter to some personal contacts who I had developed. There is nothing negative about Restore in this letter.

11)    For what it is worth, I did leave Restore under less than cordial terms, although this did not have anything directly to do with me. In July 2006, it was my perception that one of the salespeople there who had left was not given a fair shake on commissions; I was upset about that and resigned as a result. I believe that Mr. Corbett, too, believes he has reasons to feel mistreated by Mr. Tucker (which reasons I find understandable), but this has nothing to do with my right to earn a living. The reference to Mr. Tucker in my private letter to Mr. Corbett was a small joke but my feelings towards him played no part in the potential commencement of my venture with Mr. Corbett. I have some negative feelings towards Mr. Tucker for reasons which I feel are sufficient. However, any planned venture would be driven only by a desire to make money. I would not spend thirty-five cents (.35¢) solely to make Mr. Tucker uneasy, much less

provide a grant of $3,500.00 to Mr. Corbett. Any competition which we might offer to Restore would be of the sort offered by any competing business in our free capitalist society.[1]

12)    Plaintiff's papers raise the issue of Restore databases being placed on my home computer. This did not occur when I left in July 2006 but while I was still working for Restore. This was not done by myself nor done at my request; when I gave notice in July 2006 to Restore there was a transition period where I still did some work on TradWeb. Dorian Haneo, an IT consultant with Restore put this information on hard drive to allow me to work on TradWeb from my home during that final period. I never used it except to further the purposes of Restore; likewise, I never needed it subsequently and was more than happy to have Dorian take it off on April 4, 2007 after my attorney and Plaintiff's Counsel discussed the matter.

13)    Restore is a Limited Liability Company with a number of principals. It is my understanding that Robert Fox, a national sales manager, is a member of the company and resides in the State of New York.

14)    I respectfully advise the Court that Restore was supposed to pay the sum of $100,000.00 to complete the purchase by March 1, 2003. It eventually paid only $62,500.00; leaving a shortfall of $37,500.00 still owing. I do not think that it is fair for the Plaintiff to seek relief in a Court of Equity when it has not lived up to its own legal obligations.

---

[1] The letter which Plaintiff places in its Court papers was a private communication to Mr. Corbett which, as far as I know, was retained only by him and at my office at 69A Seventh Avenue. I retained an office in that building even after I left Restore in July 2006 (I own the building).

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 6th day of April, 2007, in Brooklyn, New York.

_____/s/_____
ROLAND A. LABINE

# Exhibit A





TIMBERLANE
Exterior Shutters & Shutter Hardware
**CLICK HERE** *for your free catalog.*





# tradweb
## CUSTOM BUILDING & RESTORATION SERVICES

| HOME | Search Database | Free Listing | Priority Listing | Edit Your Listing | Events Calendar |

Search Again
By Category
& Location

...or Search
by Keyword

[ Search ]

Where
do you
Rock?

ELDORADO STONE
A HEADWATERS COMPANY

www.eldoradostone.com

Send us your **feedback**
about errors in this
Directory.

Contact Our
Display Ad
Sales Team

**Continue your search by clicking on any of the
Building Arts Specialties listed below:**

Div. 1 -- ARCHITECTURAL SALVAGE & RECYCLED BUILDING MATERIALS
Div. 2 -- ARCHITECTURE & DESIGN SERVICES
Div. 3 -- ART GLASS, MURALS, MOSAICS, SCULPTURE, ARTWORK
Div. 4 -- COLUMNS, CAPITALS & BALUSTRADES
Div. 5 -- CONSERVATION SERVICES (see also specific product sections)
Div. 6 -- CONSULTING, RESEARCH, PLANNING & DOCUMENTATION
SERVICES (see also relevant product areas)
Div. 7 -- CONTRACTING, CONSTRUCTION & ENGINEERING SERVICES (see
also appropriate product sections)
Div. 8 -- DOORS, WINDOWS, GLAZING, SHUTTERS
Div. 9 -- EDUCATION & CRAFT TRAINING
Div. 10 -- FLOORING
Div. 11 -- FURNITURE, FIXTURES, FITTINGS & LIFTING SYSTEMS
Div. 12 -- HARDWARE
Div. 13 -- KITCHENS & BATHROOMS
Div. 14 -- LANDSCAPES, PARKS, GARDENS & STREETSCAPES
Div. 15 -- LIGHTING & ELECTRICAL SYSTEMS
Div. 16 -- MANTELS, FIREPLACES & CHIMNEYS
Div. 17 -- MASONRY, STONE, BRICKWORK, TERRA COTTA
Div. 18 -- MOLDED & CAST ORNAMENT
Div. 19 -- ORNAMENTAL METALWORK
Div. 20 -- PLUMBING, HEATING & COOLING SYSTEMS
Div. 21 -- PRESERVATION & PROFESSIONAL NON-PROFIT ORGANIZATIONS
Div. 22 -- ROOFING, SIDING, ROOF SPECIALTIES
Div. 23 -- SPECIAL CONSTRUCTION: CONSERVATORIES, GAZEBOS, TIMBER
FRAMES, BARNS, ETC.
Div. 24 -- SPECIALTIES: SIGNAGE, CUPOLAS, WEATHERVANES, etc.
Div. 25 -- TOOLS & EQUIPMENT
Div. 26 -- MATERIALS FOR WALLS & CEILINGS
Div. 27 -- WOODWORK, MOLDINGS, TURNINGS, STAIRS, MILLWORK
Div. 28 -- OTHER PROFESSIONAL SERVICES

**Section**
**Div. 1 -- ARCHITECTURAL SALVAGE & RECYCLED BUILDING
MATERIALS**

Art Glass, Antique
Artwork, Antique
Barn Siding, Antique

Barns, Salvaged
Bars & Back Bars, Antique
Bath Fixtures, Antique
Bath Tubs, Antique
Bells, Salvaged
Benches, Antique
Boards, Antique
Brick, Salvaged
Building Components, Salvaged
Ceiling Tin, Salvaged
Ceramic Tile, Antique
Chimney Pots, Antique
Church & Ecclesiastical Elements, Salvaged
Columns, Salvaged
Doors, Salvaged
Elevators, Antique
Faucets, Salvaged
Fencing, Salvaged
Fireplace Accessories, Antique
Fireplace Surrounds, Antique
Floor Registers, Salvaged
Flooring, Stone -- Salvaged
Flooring, Tile -- Salvaged
Flooring, Wood Parquet -- Salvaged
Flooring, Wood Plank -- Salvaged
Fountains, Salvaged
Furniture, Antique
Garden Furniture, Antique
Garden Ornament -- Antique
Gargoyles -- Salvaged
Hardware, Door -- Antique
Hardware, Furniture -- Antique
Hardware, Window -- Antique
Ironwork, Salvaged
Lighting, Exterior, Antique
Lighting, Interior, Antique
Log Houses, Salvaged
Mantels, Antique
Mirrors, Antique
Paneling, Antique
Plumbing Fixtures, Antique
Porch Furniture, Antique
Radiators, Salvaged
Roofing Slate, Salvaged
Roofing Tile, Salvaged
Shutters, Salvaged
Siding, Salvaged
Sinks, Bathroom -- Salvaged
Sinks, Kitchen -- Salvaged
Stained Glass, Antique
Stair Parts, Salvaged
Statuary, Antique
Stone, Salvaged
Storefronts, Salvaged
Stoves, Cooking -- Antique
Stoves, Heating -- Antique
Street Furnishings, Antique
Terra Cotta, Salvaged
Timbers, Salvaged
Toilets, Antique
Tools, Antique
Weathervanes, Antique
Window Glass, Antique
Windows, Salvaged
Woodwork, Salvaged

**Back to top**

**Section**
**Div. 2 -- ARCHITECTURE & DESIGN SERVICES**

Architects -- Arts & Crafts Design
Architects -- Classical Design
Architects -- Colonial & Early American Design
Architects -- Commercial Restoration & Renovation
Architects -- Commercial, New Design
Architects -- Cultural Institutions Restoration & Renovation
Architects -- Cultural Institutions, New Design
Architects -- Government Facilities Restoration & Renovation
Architects -- Government Facilities, New Design
Architects -- Hospitality Facilities, New Design
Architects -- Hospitality Facilities, Restoration & Renovation
Architects -- Institutional Restoration & Renovation
Architects -- Institutional, New Design
Architects -- New Urbanist Planning & Design
Architects -- Preservation
Architects -- Religious Buildings Restoration & Renovation
Architects -- Religious Buildings, New Design
Architects -- Residential Restoration & Renovation
Architects -- Residential, New Design
Architects -- Theater Restoration & Renovation
Architects -- Theaters, New Design
Bathroom Design
Garden Design
Interior Design -- Traditional
Kitchen Design
Landscape Architects
Project Design Management

**Back to top**

**Section**
**Div. 3 -- ART GLASS, MURALS, MOSAICS, SCULPTURE, ARTWORK**

Art Glass Restoration
Art Glass, Custom
Art Restoration -- see Div. 5
Bullseye Glass -- see Div. 8
Ecclesiastical Art, Custom
Frames -- see Picture Frames
Fresco Conservation & Restoration
Fresco Painting
Glass Bending -- see Div. 8
Glass Beveling, Custom
Glass Blowers
Glass Cut & Engraved, Custom
Glass Etching, Custom
Glass Fabrication
Glass Installers -- see Div. 8
House Renderings (see also Architectural Renderings)
Mosaic Conservation & Restoration
Mosaic Design & Creation (see also Div. 10)
Mosaic Installation
Mural Conservation & Restoration
Mural Painting
Picture Frame Gilders
Picture Frame Makers
Picture Frame Restoration
Sculptors
Sculpture Conservation
Sculpture Restoration
Sculpture, Custom Bronze
Sculpture, Custom Casting
Sculpture, Custom-Carved Stone
Sculpture, Custom-Carved Wood

Stained Glass Conservation & Restoration
Stained Glass Domes, Conservation & Restoration
Stained Glass Domes, Custom Creation
Stained Glass, Custom Creation
Trompe L'Oeil Painting -- see Div. 26
Upholstering Services

**Back to top**

**Section**
**Div. 4 -- COLUMNS, CAPITALS & BALUSTRADES**

Balustrades, Custom Cast Stone & Concrete
Balustrades, Custom Fiberglass
Balustrades, Custom Metal
Balustrades, Custom Polymer
Balustrades, Custom Polymer/Stone
Balustrades, Custom Stone
Balustrades, Custom Wood
Balustrades, Other Custom
Capitals, Custom Carved Stone
Capitals, Custom Carved Wood
Capitals, Custom Cast Gypsum & Plaster
Capitals, Custom Molded
Capitals, Other Custom
Column Restoration
Columns, Custom Cast Gypsum & Plaster
Columns, Custom Cast Stone & Concrete
Columns, Custom Fiberglass
Columns, Custom Metal
Columns, Custom Polymer
Columns, Custom Polymer/Stone
Columns, Custom Stone
Columns, Custom Wood
Columns, Other Custom
Porch Posts -- see Div. 27

**Back to top**

**Section**
**Div. 5 -- CONSERVATION SERVICES (see also specific product sections)**

Architectural Conservators
Architectural Materials Conservation
Artwork Conservation
Building Conservation
Cemetery Conservation
Fine Art Conservation -- see Artwork Conservation
Furniture Conservation
Glass Restoration -- see Div. 3
Gravesite Conservation -- see Cemetery Conservation
Monuments Conservation Services
Object Conservation
Porcelain & Glass Conservation
Textile Conservation & Restoration

**Back to top**

**Section**
**Div. 6 -- CONSULTING, RESEARCH, PLANNING & DOCUMENTATION SERVICES (see also relevant product areas)**

Adaptive Re-Use Planning & Consulting
Archeologists
Architectural Historians
Architectural Photogrammetry

Architectural Photography
Architectural Renderings (see also House Renderings)
Building Documentation (see also Measured Drawings)
Building Inspection -- see Conditions Surveys
Building Maintenance Planning -- see Maintenance Planning
Conditions Surveys
Cultural Resource Consulting
Economic Development
Environmental Consultants
HABS/HAER Consultants
Historic Preservation Consulting
Historic Research
Historic Structure Reports
House Inspection Services
Life Safety
Liturgical Art & Architecture Consulting
Maintenance Planning
Masonry Consultants
Measured Drawings
Museum Consultants
Paint Color Analysis -- see Div. 26
Paint Color Consulting -- see Div. 26
Photography
Preservation Consulting
Preservation Planning
Safety Consultants
Specification Consultants
Specification Writing
Tax Credit Planning
Town Planning -- see Urban Planning
Universal Access Consulting
Urban Planning
Website Design & Optimization

**Back to top**

**Section
Div. 7 -- CONTRACTING, CONSTRUCTION & ENGINEERING
SERVICES (see also appropriate product sections)**

3-D Scanning for CNC Production
Asbestos Abatement Contractors
Building Movers (see also House Movers)
Church Restoration
Construction Managers
Contractors -- Commercial Construction
Contractors -- Commercial Renovation
Contractors -- General
Contractors -- Residential Construction
Contractors -- Residential Restoration
Demolition Contractors
Engineers, HVAC Systems
Engineers, Structural
Hazardous Materials Abatement
House Movers (see also Building Movers)
Landscape Contractors
Lead Abatement Contractors
Mold Remediation Contractors
Smokestack Repair (see also Chimney Restoration)
Structural Repair Contractors
Waterjet Cutting Contracting

**Back to top**

**Section
Div. 8 -- DOORS, WINDOWS, GLAZING, SHUTTERS**

Art Glass -- see Div. 3
Awnings, Custom Fabric
Awnings, Custom Metal
Bronze Door Repair (see also Doors, Bronze)
Bullseye Glass, Custom
Door Restoration, Wood
Doors, Bronze -- Custom Fabrication
Doors, Bronze -- Restoration (see also Bronze Door Repair)
Doors, Carriage House -- Custom
Doors, Garage -- Custom
Doors, Metal -- Custom Fabrication
Doors, Metal -- Repair & Restoration
Doors, Screen -- Custom
Doors, Storm -- Custom
Doors, Wood -- Custom Carved
Doors, Wood -- Custom Fabrication
Doors, Wood -- Custom Fire-Rated
Doors, Wood -- Historic Replications
Entryways, Custom Metal
Entryways, Custom Wood
Epoxies, Custom -- see Div. 24
Glass Architectural, Custom Fabrication (see also Div. 3)
Glass Bending, Custom
Glass Blowers -- see Div. 3
Glass Fabrication -- see Div. 3
Glass Installers
Glass Structures -- see Div. 23
Glass, Door & Window -- Custom (see also Window Glass, Antique -- Div. 1)
Glass, Insulated Units, Custom
Sash -- see Window Sash
Shutter Restoration
Shutters, Custom Wood -- Exterior
Shutters, Custom Wood -- Interior
Skylights, Custom
Stained Glass -- see Div. 3
Steel & Metal Window Restoration
Storefronts -- see Div. 23
Weather-stripping Contractors
Window Installation
Window Reglazing
Window Restoration -- see window type
Window Sash, Custom Replication
Window Screens, Custom
Windows, Aluminum -- Custom
Windows, Aluminum -- Historic Replicas
Windows, Bronze -- Custom Fabrication
Windows, Metal -- Restoration
Windows, Steel -- Custom Fabrication
Windows, Steel -- Restoration
Windows, Storm -- Custom Inside-Mounting
Windows, Storm -- Custom Metal
Windows, Storm -- Custom Outside-Mounting
Windows, Storm -- Custom Wood
Windows, Wood -- Custom Fabrication
Windows, Wood -- Historic Replication
Windows, Wood -- Restoration

**Back to top**

**Section**
**Div. 9 -- EDUCATION & CRAFT TRAINING**

Brick Crafts Classes
Building Maintenance Courses
Business Side of Preservation Courses
Cabinetmaking Classes

Carpentry Classes
Classical Architecture Classes
Decorative Finishes Conservation Courses
Decorative Painting Classes
Degree-Granting Institutions
Faux Finishing Classes
Lime Mortar Classes
Masonry Restoration Classes
Masonry Trades Classes
Model-Making Classes
Mold-Making Classes
Ornamental Plaster Classes
Plaster Restoration Classes
Preservation Education -- General
Preservation Principles Courses
Preservation Trades Education
Repointing Workshops
Roof Flashing Workshops
Sculpture Classes
Slate Roof Repair Workshops
Stenciling Classes
Stone Carving Classes
Stone Masonry Conservation
Stone Masonry Training
Stone Wall Building Classes
Stone Wall Repair Classes
Structural Evaluation Courses
Timber Frame Restoration Workshops
Timber Framing Classes
Window Repair Classes
Wood Carving Classes
Woodworking Classes

**Back to top**

**Section
Div. 10 -- FLOORING**

Antique Wood Floors -- see Div. 1
Carpet, Custom Duplication & Production
Ceramic Tile -- see Div. 26
Concrete Floors, Custom
Floorcloths, Custom
Marble Floor Installation
Marble Floor Restoration
Marquetry Floors -- see Wood Flooring
Mosaic Borders & Floors, Custom Stone (see also Div. 3)
Mosaic Borders, Wood -- see Wood Flooring
Parquet -- see Wood Flooring
Paver Tile, Custom
Pavers, Custom Concrete
Registers -- see Div. 20
Rugs -- see Carpet
Stone Floor Installation
Stone Floor Restoration
Stone Flooring, Custom Fabrication
Terrazzo Floor Installation
Terrazzo Floor Restoration
Terrazzo Floor Specifications
Tile Floor Installation
Tile Flooring, Custom Production
Wood Floor Installation
Wood Floor Refinishing
Wood Floor Repair
Wood Flooring, Custom Border Installation
Wood Flooring, Custom Border Manufacture
Wood Flooring, Custom Hardwood Strip

Select Service/Product Category    http://restorationandbuildingservices.com/pages/php?which_page=allca

Wood Flooring, Custom Marquetry Manufacture
Wood Flooring, Custom Parquet Manufacture
Wood Flooring, Custom Wide Plank Installation
Wood Flooring, Custom Wide Plank Manufacture
Wood Flooring, Custom Wide Plank Restoration
Wood Flooring, Custom Wood Mosaic
Wood Flooring, Marquetry Installation
Wood Flooring, Marquetry Restoration
Wood Flooring, Parquet Installation
Wood Flooring, Parquet Restoration

**Back to top**

**Section**
**Div. 11 -- FURNITURE, FIXTURES, FITTINGS & LIFTING SYSTEMS**

Arts & Crafts Furniture, Custom
Bars & Back Bars, Custom
Cabinetry -- see Div. 27
Clock Repair
Clocks, Custom (see also Street Clocks; Tower Clocks -- Div. 14
Dumbwaiter Repair
Dumbwaiter Systems, Custom
Ecclesiastical Furnishings, Custom
Elevator Installation
Elevator Repair & Restoration
Elevator Systems, Custom Commercial
Elevator Systems, Custom Residential
Fabric Conservation -- see Textile Conservation
Fabrics, Custom Replication
Furnishings, Custom
Furniture Refinishing
Furniture Restoration & Repair
Furniture, Antique -- see Div. 1
Furniture, Custom
Garden Furniture -- see Div. 14
Kitchen Cabinets -- see Div. 13
Lift Systems, Custom
Musical Instrument Restoration
Pews, Custom (see also Ecclesiastical Furnishings)
Porch Furniture, Custom
Street Furnishings -- see Div. 14
Textile Conservation
Trunk Restoration & Repair
Upholstering, Furniture
Window Hangings & Treatments, Custom

**Back to top**

**Section**
**Div. 12 -- HARDWARE**

Alarm Systems -- see Security Systems
Barn Door Hardware, Custom
Cabinet Hardware, Custom Casting
Cabinet Hardware, Custom Duplication
Cabinet Hardware, Custom Forging
Carriage House Doors - see Doors, Carriage House
Door Hardware, Custom Casting
Door Hardware, Custom Duplication
Door Hardware, Custom Forging
Furniture Hardware, Custom Casting
Furniture Hardware, Custom Forging
Garage Door Hardware, Custom
Garage Doors, Custom
Gate Hardware, Custom
Gate Operators, Custom Systems

4/9/2007 11:11 AM

Hardware Consultants
Hardware Repair & Restoration
Hardware Replating
Hardware, Antique -- see Div. 1
Locksmiths
Security Systems -- see Div. 25
Shutter Hardware, Custom Casting
Shutter Hardware, Custom Duplication
Shutter Hardware, Custom Forging
Window Hardware, Custom Casting
Window Hardware, Custom Duplication
Window Hardware, Custom Forging

**Back to top**

**Section**
**Div. 13 -- KITCHENS & BATHROOMS**

Appliance Repair
Bath Tubs, Custom Ceramic
Bath Tubs, Custom Metal
Bath Tubs, Custom Porcelain
Bath Tubs, Custom Stone
Bath Tubs, Other Custom
Bathroom Cabinetry, Custom
Bathroom Design -- see Div. 2
Countertops, Custom Ceramic
Countertops, Custom Concrete
Countertops, Custom Stone
Countertops, Custom Wood
Countertops, Other Custom
Faucet Repair & Restoration
Faucets, Custom
Kitchen Cabinets, Custom
Kitchen Design -- see Div. 2
Plumbing Fixtures -- see Div. 20
Porcelain Surface Restoration
Shower Accessories, Custom
Showers, Custom
Sinks, Custom Ceramic
Sinks, Custom Metal
Sinks, Custom Porcelain
Sinks, Custom Stone
Sinks, Other Custom
Stoves, Cooking -- Antique -- see Div. 1
Wine Cellars, Custom
Wine Racks, Custom

**Back to top**

**Section**
**Div. 14 -- LANDSCAPES, PARKS, GARDENS & STREETSCAPES**

Arbors, Custom
Benches, Custom
Bridges -- see Div. 23
Fences, Custom Metal
Fences, Custom Wood
Fences, Other Custom
Flagpole Painting
Flagpoles, Custom
Fountains, Carved Stone
Fountains, Custom Cast Stone
Fountains, Custom Fiberglass
Fountains, Custom Metal
Fountains, Garden -- Custom
Fountains, Public -- Custom

Garden Design -- see Div. 2
Garden Furniture, Custom (see also Porch Furniture -- Div. 11)
Garden Lighting Installation
Garden Lighting, Custom Systems
Garden Ornament, Custom
Garden Sculpture, Custom
Gates, Custom Metal
Gates, Custom Wood
Gates, Other Custom
Gazebos -- see Div. 23
Kiosks -- see Div. 23
Landscape Contractors - see Div. 7
Landscape Design -- see Div. 2
Landscape Lighting Installation
Landscape Lighting, Custom Systems
Landscape Stone
Paver Brick -- see Div. 17
Pavers, Custom Concrete
Pavers, Custom Tile (see also Div. 10)
Pergolas -- see Arbors
Planters, Custom
Plaques -- see Div. 24
Ponds -- see Water Features
Retaining Walls, Custom (see also Stone Walls)
Signmakers -- see Div. 24
Site Amenities, Custom (see also Street Furnishings)
Stone Walls -- see Div. 17
Street Clock Restoration
Street Clocks, Custom
Street Furnishings, Custom (see also Site Amenities)
Street Lighting -- see Div. 15
Tower Clock Repair & Restoration
Tower Clocks, Custom
Urns -- see Planters
Water Features, Custom
Waterfalls, Custom

**Back to top**

**Section**
**Div. 15 -- LIGHTING & ELECTRICAL SYSTEMS**

Alarm Systems -- see Security Systems
Antique Lighting -- see Div. 1
Chandeliers, Custom
Electrical Contractors
Fan Repair
Fans, Ceiling -- Custom
Garden Lighting -- see Div. 14
Gas-Burning Lighting, Custom
Glass Bending -- see Div. 8
Lamp Posts, Custom
Lamp Shades, Custom
Landscape Lighting -- see Div. 14
Lanterns, Exterior -- Custom Fabrication
Lanterns, Interior -- Custom Fabrication
Lighting Consultants
Lighting Fixture Fabrication, Custom
Lighting Fixture Restoration & Repair
Lighting Fixtures, Custom Historic Replication
Lighting Glass, Custom
Lighting System Design, Exterior Non-Residential
Lighting System Design, Exterior Residential
Lighting System Design, Interior Non-Residential
Lighting System Design, Interior Residential
Lighting System Design, Liturgical
Lightning Protection -- see Div. 22

Select Service/Product Category    http://restorationandbuildingservices.com/pages.php?which_page=allca

Postlights, Custom
Street Lighting, Custom

**Back to top**

**Section
Div. 16 -- MANTELS, FIREPLACES & CHIMNEYS**

Chimney Construction
Chimney Liners, Custom-Tailored Systems
Chimney Lining Contractors
Chimney Pots, Custom
Chimney Restoration (see also Smokestack Repair -- Div. 7)
Fireplace Accessories, Custom
Fireplace Restoration
Fireplace Tile, Custom
Fireplaces, Custom Design & Installation
Fireplaces, Custom Stone
Fireplaces, Rumford -- Custom
Mantels, Antique -- see Div. 1
Mantels, Custom Carved Stone
Mantels, Custom Carved Wood
Mantels, Custom Cast Gypsum & Plaster
Mantels, Custom Cast Stone
Mantels, Custom Stone
Mantels, Custom Wood

**Back to top**

**Section
Div. 17 -- MASONRY, STONE, BRICKWORK, TERRA COTTA**

Brick Cleaning & Restoration (see also Concrete Cleaning; Stone Cleaning)
Brick Colorants, Custom Formulations
Brick Conservation & Consulting
Brick Engraving
Brick Masons
Brick Pavers, Custom
Brick, Antique Clinker (see also Div. 1)
Brick, Custom Shapes & Colors
Brick, Handmade
Brick, Salvaged -- see Div. 1
Bricklayers
Cast Stone -- see Div. 18
Caulking -- see Waterproofing Contractors
Chimneys -- see Div. 16
Concrete Cleaning (see also Brick Cleaning; Stone Cleaning)
Concrete Contractors
Concrete Restoration
Exterior Restoration -- see Facade Restoration
Facade Restoration
Landscape Stone -- see Div. 14
Marble Cleaning
Marble Restoration (see also Div. 10)
Marble, Custom-Cut Elements
Masonry Anchoring Systems, Custom
Masonry Cleaners, Custom Formulations
Masonry Cleaning (see also Brick Cleaning)
Masonry Color Blending Contractors
Masonry Conservators & Consultants
Masonry Contractors (see also Bricklayers)
Masonry Paint Strippers -- Custom Formulations
Masonry Paint Stripping Contractors
Masonry Repair & Restoration
Masonry Tools -- see Div. 25
Masonry Waterproofing (see also Waterproofing Contractors)
Mortar Analysis Services

Mortar, Custom Colors
Mortar, Custom Formulations
Mortar, Custom Matching Services
Paint Removal -- see Masonry Paint Stripping; see also Div. 26
Pointing -- see Tuckpointing
Precast Concrete -- see Cast Stone in Div. 18
Quarries, Custom -- see Stone Quarries
Repointing -- see Tuckpointing
Stone Analysis & Identification
Stone Carving
Stone Carving Tools -- see Div. 25
Stone Conservators & Consultants
Stone Fabrication, Custom
Stone Lettering, Custom Carving
Stone Quarries
Stone Repair Mortars, Custom Blends
Stone Restoration Contracting
Stone Setters & Masons
Stone Turnings, Custom
Stone Wall Construction
Stone, Custom Dimensional
Stone, Custom Turnings (see Stone Turnings)
Stone, Salvaged -- see Div. 1
Stucco Application Contractors
Stucco Materials, Custom Formulations
Stucco Repairs
Terra Cotta Repair Contracting
Terra Cotta Repair Mortars, Custom Blends
Terra Cotta Replica Materials, Custom Elements
Terra Cotta, Custom Production
Terra Cotta, Installation Contractors
Terrazzo Installation
Terrazzo Repairs & Restoration
Tuckpointing
Waterproofing Contractors (see also Masonry Waterproofing)

**Back to top**

**Section**
**Div. 18 -- MOLDED & CAST ORNAMENT**

Architectural Fiberglass -- see Fiberglass
Balustrades -- see Div. 4
Capitals -- see Div. 4
Cast Stone Elements, Custom
Casting Materials, Custom Formulations
Casting Technology & Consulting Services
Ceiling Ornament -- see Div. 26
Columns -- see Div. 4
Composites, Custom Casting
Cornices, Exterior Fiberglass -- Custom
Cornices, Exterior Polymer -- Custom
Cornices, Exterior Sheetmetal -- see Div. 19, Div. 22
Cornices, Exterior Wood -- see Div. 27
Fiberglass, Custom Molding
Foam Cutting
Foamed Polymer Shapes, Custom
GFRC Custom Casting
GRG Custom Casting
Hot-Wire Foam Cutting
Mantels -- see Div. 16
Model Making for Castings; see also Div. 28
Modified-Gypsum Casting Materials
Modified-Gypsum Casting Technology
Mold-Making Materials, Custom Formulations
Mold-Making Services
Moldings, Custom FRP Fiberglass

Moldings, Custom GFRC
Moldings, Custom Gypsum
Moldings, Custom Plaster
Moldings, Custom Polymer-Modified GRG Gypsum
Moldings, Custom PVC
Moldings, Custom Urethane Foam
Moldings, Custom Urethane--Solid
Plaster Casting, Custom
Precast Concrete -- see Cast Stone
Stairs, Cast Stone -- Custom
Terra Cotta -- see Div. 17

**Back to top**

**Section
Div. 19 -- ORNAMENTAL METALWORK**

Aluminum Foundries
Aluminum, Custom Casting
Antique Metalwork -- see Div. 1
Brass, Custom Casting
Bronze Foundries
Bronze, Custom Casting
Cast Iron Foundries
Cast Iron Repairs
Cast Iron, Custom Castings
Coppersmiths (see also Sheetmetal Ornament)
Cornices, Custom Sheetmetal (see also Div. 22, Div. 27)
Cresting -- see Div. 22
Decorative Metal Panels -- see Embossed Metal; Perforated Metal
Embossed Metal, Custom
Extruded Metal, Custom
Fabrications -- see Metal Fabrication
Fences, Custom -- see Div. 14
Finials, Custom
Flashing -- see Sheetmetal Contractors
Forged Hardware -- see Div. 12
Forged Metalwork Installation
Forged Metalwork Repairs
Forged Metalwork, Custom Fabrication
Gates, Custom -- see Div. 14
Grilles - see Div. 20
Handrails, Custom Metal (see also Railings, Custom Metal)
Hardware, Custom Metal -- see Div. 12
Iron Foundries -- see Cast Iron
Iron, Custom Casting -- see Cast Iron
Louvers -- see Vents
Metal Casting -- Custom
Metal Coatings -- see Patinas
Metal Fabrications, Custom
Metal Plating
Metal Polishing
Metal Refinishing Services
Metalwork Repairs & Restoration
Model Making for Castings -- see Div. 18
Ornamental Metal Fabricators
Patinas, Metal -- Custom Formulations
Perforated Metal, Custom
Railings, Custom Metal Fabrication (see also Handrails, Custom Metal)
Railings, Metal -- Installation
Registers, Metal -- see Div. 20
Salvaged Metalwork -- see Div. 1
Sheetmetal Contractors
Sheetmetal Ornament Installation
Sheetmetal Ornament, Custom
Stairs, Custom Metal -- see Div. 27
Tin Ceilings -- see Div. 26

Tinsmiths -- see Sheetmetal Ornament
Vents -- see Div. 22
Waterjet Cutting -- see Div. 7
Weathervanes -- see Div. 24
Welding Services
Wrought Iron -- see Forged Metalwork

**Back to top**

**Section**
**Div. 20 -- PLUMBING, HEATING & COOLING SYSTEMS**

Bathroom Fixtures -- see Div. 13
Faucets -- see Div. 13
Fountains -- see Div. 14
Grilles, Custom Metal
Grilles, Custom Wood
Heating Stove Repairs
Heating Stoves, Antique -- see Div. 1
Heating System Contractors
HVAC System Design
HVAC System Installation
Plumbing Contractors
Plumbing Fixture Repair & Restoration
Plumbing Fixtures, Antique -- see Div. 1
Plumbing Fixtures, Custom (see also Div. 13)
Radiant Floor Heating, Custom
Radiator Cabinets, Custom
Radiators, Salvaged -- see Div. 1
Registers, Custom Metal
Registers, Custom Wood
Stove Restoration -- see Heating Stove Repairs
Vents -- see Div. 22

**Back to top**

**Section**
**Div. 21 -- PRESERVATION & PROFESSIONAL NON-PROFIT
ORGANIZATIONS**

Preservation Organizations
Professional Associations
Trade Associations

**Back to top**

**Section**
**Div. 22 -- ROOFING, SIDING, ROOF SPECIALTIES**

Bird Control -- see Div. 24
Clapboards -- see Siding
Conductor Heads -- see Leader Boxes
Cornices, Exterior -- Custom (see also Div. 19, Div 27)
Cresting, Custom
Flashing -- see Sheetmetal Contractors, Div. 19
Gilding, Exterior -- see Div. 22
Gutters & Leaders, Custom Metal
Gutters, Custom Wood
Insulation Contractors
Leader Boxes, Custom
Lightning Protection Systems, Custom
Louvers -- see Vents
Metal Roofing Installation -- see Sheetmetal Roofing Installation
Metal Roofing Repair -- see Sheetmetal Roofing Repair
Metal Roofing, Custom Fabrication -- see Sheetmetal Roofing, Custom
Riggers (see also Steeplejacks)
Roofing Consultants

Roofing Contractors
Roofing Repair Contracting
Salvaged Roofing -- see Div. 1
Scuppers -- see Leader Boxes
Sheetmetal Ornament -- see Div. 19
Sheetmetal Roofing Installation
Sheetmetal Roofing Repair
Sheetmetal Roofing, Custom Fabrication
Siding Contractors
Siding Repair
Siding, Custom Fabrication
Siding, Custom Wood Clapboard
Siding, Custom Wood Shingles
Siding, Quartersawn Wood
Skylights, Custom -- see Div. 8
Slate Quarries
Slate Roofing Installation
Slate Roofing Repair
Slate Roofing, Custom-Matched Slates
Slate Roofing, Salvaged -- see Div. 1
Snow Guards, Custom
Thatch, Custom
Thatching Contractors
Tile Roofing Installation
Tile Roofing Repair
Tile Roofing, Custom Production
Tile Roofing, Custom-Matched Tiles
Tile Roofing, Salvaged -- see Div. 1
Vents, Custom
Waterproofing Contractors -- see Div. 17
Weathervanes -- see Div. 24
Wood Roofing Shakes, Custom
Wood Roofing Shingles, Custom

**Back to top**

**Section**
**Div. 23 -- SPECIAL CONSTRUCTION: CONSERVATORIES, GAZEBOS, TIMBER FRAMES, BARNS, ETC.**

Bandstands, Custom
Barn Construction
Barn Conversions
Barn Dismantling & Reassembly
Barn Moving
Barn Restoration
Bridge Construction, Timber
Bridge Restoration, Timber (see also Covered Bridge Restoration)
Bridges, Custom Ornamental
Bridges, Custom Pedestrian
Bridges, Custom Vehicular
Conservatories, Custom
Conservatory Restoration
Covered Bridge Restoration (see also Bridge Restoration, Timber)
Gazebos, Custom
Glass Structures, Custom
Greenhouse Restoration
Greenhouses, Custom
House Movers -- see Div. 7
Kiosks, Custom
Log House Construction
Log House Restoration
Outbuildings, Custom
Sawmills
Steeplejacks (see also Riggers)
Steeples, Custom
Storefronts, Custom Metal

Select Service/Product Category                    http://restorationandbuildingservices.com/pages.php?which_page=allca

Storefronts, Custom Wood
Timber Frame Construction
Timber Frame Planning, Design & Engineering
Timber Frame Restoration
Timbers, Custom Cut
Timbers, Salvaged -- see Div. 1

**Back to top**

**Section
Div. 24 -- SPECIALTIES: SIGNAGE, CUPOLAS, WEATHERVANES, etc.**

Auction Houses
Bell Hangers
Bell Repair & Restoration
Bells, Custom; see also Carillons
Bells, Salvaged -- see Div. 1
Bells, Tower -- Custom
Bird Control System Design
Bird Control System Installation
Bird Droppings Abatement
Book Publishers
Carillon Repair
Carillons, Custom; see also Bells
Clocks -- see Div. 11
Clocks, Street -- see Div. 14
Clocks, Tower -- see Div. 14
Cupolas, Custom Fiberglass
Cupolas, Custom Metal
Cupolas, Custom Wood
Epoxies, Custom Formulations
Markers -- see Plaques
Model Makers -- Architectural (see also Div. 18)
Periodical Publishers
Picture Frames -- see Div. 3
Plaques, Custom
Rare Book Dealers
Signmakers
Steeples -- see Div. 23
Tower Bells -- see Bells
Trade Shows & Exhibition Sponsors & Producers
Weathervanes, Custom

**Back to top**

**Section
Div. 25 -- TOOLS & EQUIPMENT**

Alarm Systems -- see Security Systems; Fire Protection
Crack Monitoring Systems
Crane Service
Decorating Tools
Electrolytic Corrosion Control
Fire Protection Systems
Humidity Measurement & Control Systems
Ladders, Custom
Masonry Tools
Moisture Meters
Moisture Monitoring Systems
Preservation Tools & Supplies
Roofing Tools
Scaffolding Systems, Custom
Security Systems, Custom
Stone Carving Tools

**Back to top**

**Section**
**Div. 26 -- MATERIALS FOR WALLS & CEILINGS**

Architectural Finish Conservation
Ceiling Domes, Custom
Ceiling Medallions, Custom Plaster & Gypsum
Ceiling Medallions, Custom Polymer & Composites
Ceiling Moldings, Custom
Ceilings, Custom Ornamental Metal
Ceilings, Custom Ornamental Plaster
Ceilings, Custom Ornamental Polymer Panels
Ceilings, Custom Ornamental Wood
Ceramic Tile Installation
Ceramic Tile, Custom Historic Replications
Ceramic Tile, Custom Production
Ceramic Tile, Hand-Painted
Cornice Moldings, Custom Plaster & Gypsum
Cornice Moldings, Custom Polymer & Composites
Decorative Arts Studios
Decorative Painting
Encaustic Tile, Custom Replication
Faux Finishes
Gilding, Exterior -- see Div. 22
Gilding, Interior
Glazing
Gold Leafing -- see Gilding
Graining; (see also Faux Finishes)
Marbleizing; (see also Faux Finishes)
Paint Analysis & Testing
Paint Color Consulting -- Exterior
Paint Color Consulting -- Interior
Paint Stripping Services (see also Wood Stripping in Div. 27)
Painted Finishes -- see Faux Finishes
Painting, Exterior
Painting, Interior (see also Decorative Painting)
Paints, Custom Blended
Plaster Analysis & Conservation
Plaster Consultants
Plaster Contractors -- Decorative
Plaster Contractors -- Flat Work
Plaster Ornament -- see Div. 18
Plaster Restoration
Relief Tile, Custom Production
Scagliola Installation
Scagliola Restoration
Stencil Patterns, Custom
Stenciling
Tin Ceiling Installation
Tin Ceilings, Custom Fabrication (see also Ceilings, Custom Ornamental
Metal)
Trompe L'Oeil Painting
Venetian Plaster Contractors
Venetian Plaster, Custom Formulations
Wallpaper Conservation
Wallpaper Installation
Wallpaper, Custom Replication & Production
Wood Refinishing -- see Div. 27

**Back to top**

**Section**
**Div. 27 -- WOODWORK, MOLDINGS, TURNINGS, STAIRS,
MILLWORK**

Antique Wood -- see Resawn Lumber
Architectural Fiberglass -- see Div. 18
Bars & Back Bars, Custom

Cabinetmakers
Carpenters, Restoration
Casework, Custom
Cornices, Exterior -- Custom Wood (see also Div. 18, Div. 19, Div. 22)
Epoxies, Custom -- see Div. 24
Fretwork -- see Gingerbread Ornament
Gingerbread Ornament, Custom
Kitchen Cabinets -- see Div. 13
Marquetry, Custom
Millwork, Custom Architectural -- Polymer
Millwork, Custom Architectural -- Wood
Moldings, Custom Wood
Moldings, Flexible -- Custom
Newel Posts, Custom
Paneling, Custom
Porch Posts, Custom
Railings, Custom Metal - Div. 19
Railings, Custom Wood
Resawn Lumber & Boards (see also Div. 1, Div. 10)
Salvaged Wood -- see Resawn Lumber
Shutters -- see Div. 8
Stair Parts, Custom Metal
Stair Parts, Custom Wood
Stairs, Cast Stone -- see Div. 18
Stairs, Custom Metal -- Curved
Stairs, Custom Metal -- Monumental
Stairs, Custom Metal -- Spiral
Stairs, Custom Metal -- Straight
Stairs, Custom Stone
Stairs, Custom Wood -- Curved
Stairs, Custom Wood -- Monumental
Stairs, Custom Wood -- Spiral
Stairs, Custom Wood -- Straight
Stairs, Other Custom
Timbers, Custom-Cut -- see Div. 23
Timbers, Salvaged -- see Div. 1
Turnings, Custom Wood
Victorian Gingerbread -- see Gingerbread
Wood Carvings -- Custom Machined
Wood Carvings -- Hand-Carved
Wood Refinishing
Wood Restoration
Wood Restoration Consulting
Wood Stripping (see also Paint Stripping in Div. 26)
Woodworkers -- see Cabinetmakers
Woodworkers -- see Carpenters

**Back to top**

**Section**
**Div. 28 -- OTHER PROFESSIONAL SERVICES**

Musical Instrument Restoration -- see Div. 11

**Back to top**

ALPHABETICAL INDEX OF CATEGORIES

Case 1:07-cv-00573-RJL    Document 10-2    Filed 04/09/2007    Page 28 of 28

http://restorationandbuildingservices.com/pages.php?which_page=allca

Back to top

Traditional Building's Services Directory

Search Listings (HOME) | FREE Listing Sign Up | Priority Listing Sign Up
Listing Log In | Listing Support | Listing Terms and Conditions
Listing FAQ | Feedback/Contact Us | Display Ad Sales

Copyright 2007 Restore Media LLC. All Rights Reserved.

4/9/2007 11:11 AM

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RESTORE MEDIA, LLC,

      Plaintiff,

v.

ROLAND A. LABINE, *et al.*,

      Defendants.

Civil Action No. 07-573 (RJL)

**<u>ORDER</u>**

Upon consideration of Defendant Roland A. Labine's Motion to Dismiss, any opposition thereto, any reply in support thereof, the entire record herein, and for good cause shown, it is this

_____ day of _____, 2007, hereby:

**ORDERED** that Defendant Labine's Motion is **GRANTED**.

_____
RICHARD J. LEON
United States District Judge

DC:65524.1