## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RESTORE MEDIA, LLC,

      Plaintiff,

v.

ROLAND A. LABINE, *et al.*,

      Defendants.

Civil Action No. 07-573 (RJL)

## DEFENDANT ROLAND A. LABINE'S OPPOSITION TO PLAINTIFF RESTORE MEDIA, LLC'S MOTION FOR A PRELIMINARY INJUNCTION

Defendant Roland A. Labine ("Labine"), by and through his attorneys, and, pursuant to Rules 7 and 65 of the Federal Rules of Civil Procedure and Local Civil Rule 65.1, respectfully submits this opposition to Plaintiff Restore Media, LLC's ("Restore") motion for a preliminary injunction.

## I.
## PRELIMINARY STATEMENT

Plaintiff's motion should be denied because Plaintiff cannot satisfy the high standard for irreparable harm. The decision whether or not to grant a preliminary injunction is a procedural function of this Court, carried out within the framework of the applicable four- (4)-pronged analysis. However, it is the appropriate substantive law which informs the Court's analysis within this procedural framework. In this case, the parties agreed that the governing case law should be that of the State of New York. That agreement is embodied in the Assets and Liabilities Purchase Agreement and Employment Agreement, executed in March 2002, and is at the root of this litigation. When substantive New York State law is applied to the preliminary injunction analysis, it is pellucidly evident that Plaintiff cannot carry its high burden of persuasion at this nascent stage of litigation and demonstrate that the drastic provisional remedy

of preliminary injunction is available to it.  Courts generally are reluctant to enforce the sort of broadly anti-competitive restrictive covenant upon which Plaintiff relies in this matter. Therefore, there is no substantial likelihood that Restore will prevail on the merits.[1]  Because Plaintiff's position on the underlying anti-competition clause is weak, it is unlikely that the Court will enforce this covenant.  This leaves Plaintiff in the position of being unable to establish the sort of harm for which the Court will provide a remedy.  While Labine certainly may compete with Restore in the future, there is no tangible indication that this competition would be aided by proprietary or confidential information acquired from Restore.  Plaintiff cannot, therefore, demonstrate that it will suffer any cognizable harm from Labine's potential competition.  As such, any restraint on Labine's capacity to earn a living in a field where he has worked for thirty-five (35) years will cause him the sort of harm from which Courts strive to protect employees, whereas Plaintiff will bear only that "harm" which Courts are reluctant to redress.  This tips the balance of equities distinctly in Labine's favor.  Moreover, the issuance of injunctive relief under the circumstances presented here would not be in the public interest.  Indeed, this is especially so where, as here, public policy does not favor denying an individual his or her opportunity to earn a living.  Accordingly, the Court should not issue preliminary injunctive relief and should deny Plaintiff's motion in its entirety.

## II.
## BACKGROUND[2]

Roland A. "Clem" Labine is a gentleman with approximately thirty-five (35) years of experience in the traditional home market.  In 1987, Labine founded two (2) well-

---

[1] This argument is addressed below under New York and District of Columbia law.  In any event, the subject anti-competitive covenant should not be enforced.

[2] Unless otherwise noted, the facts set forth herein are supported by the Declaration of Roland A. Labine, attached hereto as Exhibit 1.

regarded and popular magazines in the field which his corporation eventually sold to Plaintiff along with two (2) adjunct websites in March 2002.  These web sites were not making any substantial profit at the time of the sale and are not raised as an issue in this litigation.  Likewise, there is no allegation that any present or potential action on Labine's part will or could affect the operation of the two magazines.  The controversy revolves around a web site purchased in December 2003 from a third-party.  Some two (2) years later, Plaintiff "transitioned" this into TradWebDirectory.com, a web site which Labine helped develop over the end of 2005 and the first half of 2006.

The parties' transaction was structured as an Asset and Liabilities Purchase Agreement, specifically integrated with a related Employment Agreement by and between Restore and Labine.  The Employment Agreement contained an non-compete clause.  Both the Purchase Agreement and the Employment Agreement cross-reference the other; the consummation of the assets transfer was specifically conditioned on the parties' execution of the Employment Agreement, which is designated in the contract as a "Related Instrument" which, along with the Assets Transfer, "contain[s] the entire agreement between the parties".  The parties further agreed in the same paragraph (8.5) that the Agreement would be construed according to the laws of the State of New York.  The parties signed the contract in Labine's office in Brooklyn, New York.

From March 1, 2002, through July 31, 2006, Labine continued in Restore's employ.  Towards the end of 2005, he worked on "TradWebDirectory.com" ("TradWeb"), a web site Restore was attempting to get off of the ground.  Labine concentrated on organizing the web site and writing descriptions of each category of home improvement.  There is nothing which

is unique or proprietary about what he did.  Moreover, no proprietary sales or marketing

strategy existed at Restore during his period of employment.

In January 2007, Labine entered into preliminary discussions with co-defendant John

Corbett about starting a web site of their own which would compete to some degree with

TradWeb.  Seeking to restrain this competition, Plaintiff commenced the action before this

Court.

## III.
## LEGAL STANDARDS AND ANALYSIS

**A.    Legal Standard For Issuance Of Preliminary Injunction**

It is well-settled that to succeed on a motion for a preliminary injunction, the moving

party must establish the following four (4) factors: (1) a substantial likelihood of success on the

merits; (2) that irreparable injury will result to the moving party absent injunctive relief; (3) the

relief sought will not harm the non-moving party to a greater extent than that which the moving

party will suffer absent an injunction; and (4) that the public interest is best served by an

issuance of an injunction. *Laborers' Int'l Union of America Nat'l (Indus.) Pension Fund, et al. v.*

*Pacific Ascorp*, Civil Action No. 90-613, 1990 U.S. Dist. LEXIS 19030, **6-7 (D.D.C. May 30,

1990) (citing *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d

841, 844 (D.C. Cir. 1977)); *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259

F.2d 921, 925 (D.C. Cir. 1958)).  A preliminary injunction is an extraordinary remedy that

should not  be granted absent a clear and convincing showing by the moving party.  *Association*

*of Flight Attendants-CWA v. Pension Benefit Guaranty Corp.*, 372 F. Supp. 2d 91, 98 (D.D.C.

2005); *see also Pattern Makers' Pension Trust Fund v. The Erler Corp.*, Civil Action No. 92-C-

3350, 1992 U.S. Dist. LEXIS 10193, *2 (N.D. Il. July 1, 1992).

**B.    This Court Should Apply New York State Law As Agreed To By The Parties**

The District of Columbia Court of Appeals has adopted the general rule that parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified. *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391 (D.D.C. 1995). Such is the case here.

The underlying transactional documents reflect the intention of Restore and Labine to be bound by New York State law in the event of any controversy. Labine respectfully refers the Court to the Restatement Second of Conflicts of Law, §187, which provides, in pertinent part:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

In bringing this action, Plaintiff relies primarily upon two (2) interrelated contracts executed between Mr. Labine and Plaintiff in March 2002. The master document was an "Asset and Liabilities Purchase Agreement" ("Asset Agreement"), containing the financial terms which

merged with certain other documents attached as schedules to "contain the entire agreement between the parties with respect to the subject matter of this Agreement" (Ex. A of Pl.'s Compl. at ¶¶ 8.5 and 8.7).  Attached to the Asset Agreement as Schedule 4.2.2 is the March 1, 2002 Employment Agreement, which is clearly identified in the Asset Agreement as a "Related Instrument", which is part of the parties' "entire agreement".  Therefore, there is little doubt that the parties intended that the Employment Agreement be part of the overall "Agreement [which] shall be construed in accordance with the laws of the State of New York."  This is consistent with the fact that the contracts were executed in Brooklyn, New York, and that the arbitration of any dispute arising out of Restore's "holdback" of $100,000.00 be venued in Kings County New York (Brooklyn) (Ex. A. of Pl.'s Compl. at ¶ 1.4).  The two (2) Agreements were not only closely interrelated, but interdependent as well – one could not have been signed without the other.  The comprehensive sweep of the language defining the "Parties' Agreement" found in paragraphs 8.5 and 8.7 compels the conclusion that the parties intended that New York law apply to all aspects of their transaction, including the Employment Agreement.  Accordingly, New York law should apply here.  *See Ekstrom*, 68 F.3d at 1394.

**C.    Plaintiff Cannot Establish The Likelihood That He Will Succeed On The Merits Of His Case**

The leading New York case on restrictive covenants in employment agreements is *Columbia Ribbon & Carvin MFG. Co., Inc. v. A-1A Corp.,* 42 N.Y.2d 496, 369 NE 2d 4, 398 NYS 2d 1004 (1977).  In this case, New York's highest Court addressed a situation, similar to the instant dispute, where a plaintiff sought to do "no more than baldly restrain competition."  42 N.Y.2d at 499.  The Court of Appeals provided a comprehensive analysis of the relevant New York State public policy in this area:

> Since there are "powerful considerations of public policy which
> militate against sanctioning the loss of a man's livelihood",
> *Purchasing Assoc. v. Weitz*, 13 N.Y.2d 267, 272, 246 N.Y.S.2d
> 600, 603, 196 N.E.2d 245, 247), restrictive covenants which tend
> to prevent an employee from pursuing a similar vocation after
> termination of employment are disfavored by the law. *Clark
> Paper & Mfg. Co. v. Stenacher*, 236 N.Y. 312, 142 N.E. 316;
> Mandel, Preparation of Commercial Agreements (1973 ed.), p.
> 148). Such covenants will be enforced only if reasonably limited
> temporally and geographically. *Gelder Med. Group v. Webber*, 41
> N.Y.2d 680, 683, 394 N.Y.S.2d 867, 869, 363 N.E.2d 573, 576;
> *Reed, Roberts Assoc. v. Strauman*, 40 N.Y.2d 303, 307-308, 386
> N.Y.S.2d 677, 680, 353 N.E.2d 590, 593), and then only to the
> extent necessary to protect the employer from unfair competition
> which stems from the employee's use or disclosure of trade secrets
> or confidential customer lists (*Reed, Roberts Assoc. v. Strauman*,
> *supra*, p. 308, 386 N.Y.S.2d p. 680, 353 N.E.2d p. 593). Thus,
> where the employer's past or prospective customers' names are
> readily ascertainable from sources outside its business, trade secret
> protection will not attach and their solicitation by the employee
> will not be enjoined (*Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387,
> 392, 328 N.Y.S.2d 423, 427, 278 N.E.2d 636, 639).

*Columbia Ribbon*, 42 N.Y.2d at 499. The Court further applied this broad rule to an anti-

competition clause which has striking similarities to that which is before this Court:

> It is clear that its broad-sweeping language is unrestrained by any
> limitations keyed to uniqueness, trade secrets, confidentiality or
> even competitive unfairness. It does no more than baldly restrain
> competition. This it may not do. Consequently, as plaintiff itself
> now recognizes, on its face the covenant is too broad to be
> enforced as written. (See *Paramount Pad Co. v. Baumrind*, 4
> N.Y.2d 393, 175 N.Y.S.2d 809, 151 N.E.2d 609; *Janitor Serv.
> Mgt. Co. v. Provo*, 34 A.D.2d 1098, 312 N.Y.S.2d 580; *but cf.
> Bates Chevrolet Corp. v. Haven Chevrolet*, 13 A.D.2d 27, 313
> N.Y.S.2d 577, 16 A.D.2d 917, 229 N.Y.S.2d 168, aff'd., 13
> N.Y.2d 644, 240 N.Y.S.2d 759, 191 N.E.2d 290.)

*Id.*

A promise is unenforceable on grounds of public policy if it is unreasonably in restraint

of trade. *Ellis v. James V. Hurson Assoc., Inc.*, 565 A.2d 615, 618 (D.C. 1989). A promise is in

restraint of trade if its performance would restrict the promisor in the exercise of a gainful

occupation. *See id.* Here, Plaintiff seeks to prevent Labine either directly or indirectly from performing <u>any</u> activity in the "historic restoration market." This extraordinarily broad provision would prevent Labine from doing anything whatsoever to earn a living in his chosen field. The scope of the covenant is "unrestrained by any limitations keyed to uniqueness, trade secrets, confidentiality or even competitive unfairness." *Columbia Ribbon*, 42 N.Y.2d at 499. This clause, which Plaintiff candidly admits must be applied to a nationwide market definition (Docket No. 3 at 8), is substantively overbroad in its scope and in its unrestrained geographic area. Moreover, Plaintiff contends that Labine's agreement to the non-compete clause weighs in its favor (*id.* at 9), but it must be noted that this factor is completely absent from the analysis of New York State courts. Indeed, the fact that both parties are sophisticated business people does not insulate Restore from the strictures of public policy, whether New York's or the District of Columbia's. *Columbia Ribbon*, 42 N.Y.2d at 499; *Ellis*, 565 A.2d at 618.

TradWeb was not part of the assets sold by Labine's corporation to Restore; it was first developed more than three (3) years after the Asset Agreement/Employment Agreement was executed. Nothing which Labine sold to Restore was utilized in TradWeb's development and nothing which Labine might bring to a competing internet web site was appropriated from Restore.

Plaintiff's own papers assert that TradWeb was "transitioned" from a web site acquired on December 31, 2003 from a third party (Compl. at ¶ 18). Restore possessed the web site for almost two (2) years before it asked Labine to help develop it. Labine was paid a salary and, in turn, benefited his employer by applying to the project his writing skills and knowledge of the historic restoration market. All of the foregoing, though, is irrelevant with respect to Restore's purchase of Labine's assets. Plaintiff's Complaint provides nothing more than conclusory

assertions concerning any proprietary information or strategies. Labine specifically and concretely denies receipt of any such "confidential information." Therefore, on the record before this Court, Plaintiff has not establish the likelihood of success on the merits. In truth, Restore looks to do nothing more than restrain a potential competitor from taking its place on a competitively level field. This restraint is against the public interest and should not be enforced by this Court. *Columbia Ribbon*, 42 N.Y.2d at 499; *Ellis*, 565 A.2d at 618.

**D.      Plaintiff Has Not Made A Showing That It Will Suffer Irreparable Harm If The Preliminary Injunction Is Not Issued**

Whichever jurisdiction's law is applied, there remains one critical common factor:  anti-competition clauses in employment agreements are closely scrutinized by the courts. This reflects the longstanding principal that violation of such a contractual provision will only be enforced if it affects a legitimate business interest of the employer. This "legitimate business interest" will exist in cases where the capacity for the former employee to compete has been enhanced by acquisition of confidential or proprietary information. Absent this element, Plaintiff cannot claim the sort of harm for which there is a judicial remedy. If the harm is deemed to be judicially irremediable, it cannot qualify as a predicate for a preliminary injunction. Therefore, Plaintiff must make a clear and compelling showing that, under the facts and circumstances of this matter, the broad anti-competition clause is enforceable. The bare conclusory allegations which make up the fabric of the Complaint do not do that. Therefore, Plaintiff has not made the requisite showing of irreparable harm if the injunction does not issue.

**E.      The Issuance Of A Preliminary Injunction Will Offend Rather Than Further Public Policy**

Enforcement of the extremely broad non-compete clause is not in the public interest. Its enforcement would impose an undue hardship on Labine and go far beyond the necessary scope

which is required for the protection of a legitimate interest of Restore's. Indeed, its enforcement would effectively prevent Labine from working in his field of expertise, and would not serve the public interest. In *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 712 NE 2d 1220, 690 NYS 2d 854 (1999), the New York State Court of Appeals, in addressing the issue of restrictive covenants, established a three- (3)-pronged test which, when applied to the facts of this case, makes it clear that the restraint that Plaintiff seeks to impose upon Labine is violative of New York State public policy:

> The modern, prevailing common-law standard of reasonableness for employee agreements not to compete applies a three-pronged test. A restraint is reasonable only if it (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public (*see, e.g., Technical Aid Corp. v. Allen*, 134 N.H. 1, 8, 591 A.2d 262, 265-266; Blake, op. cit., at 648-649; Restatement [Second] of Contracts §188). A violation of any prong renders the covenant invalid.

> New York has adopted this prevailing standard of reasonableness in determining the validity of employee agreements not to compete. "In this context a restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee" (*Reed, Roberts Assocs. v. Starman*, 40, N.Y.2d 303, 307, 386 N.Y.S.2d 677, 353, N.E.2d 590).

*BDO Seidman*, 93 N.Y.2d at 388-89.

Nothing in the history of Restore's relationship with Labine suggests that it is in Restore's <u>legitimate</u> interests to restrain its former employee from earning a living. Labine's proposed Restoration Trades Exchange web site is in no way connected to any consideration Restore acquired in the Asset Agreement or information Labine received in the course of his employment with Restore. Although Plaintiff pays lip service to the notion that Labine will not suffer substantial harm if an injunction is ordered, its prayer for relief says otherwise. *Compare*

Docket No. 3 at 12 *and* Docket No. 3 at 13-14.  Plaintiff's attempt to unreasonably restrain competition and effectively prevent Labine from working in his field of expertise is not in society's interest and should not be enforced by the Court.

**F.**      **If The Court Grants The Preliminary Injunction, Labine Will Be Harmed To A Greater Extent Than Restore Will Suffer Without Injunctive Relief**

The harm the restraint sought here would cause to Labine is greater than the potential harm Plaintiff might suffer in the absence of injunctive relief.  Given the premium courts traditionally place on the rights on the employee, it is not possible for Plaintiff to make the case that the sweeping anti-competitive clause at issue will not harm Labine.  Far from the alleged destruction of contracts, reward of theft, and encouragement of "pilfering" and other unethical behavior cited by Plaintiff (Docket No. 3 at 13), the only "harm" which Restore will potentially suffer is that of possibly facing fair competition on a level playing field.  Under the laws of both New York State and the District of Columbia, and as set forth more fully above, Plaintiff cannot make the leap from fair competition to injunctive relief.

**IV.**
**CONCLUSION**

For the foregoing reasons, Plaintiff has failed to meet the requisite requirements for a preliminary injunction.

Wherefore, Defendant Roland A. Labine requests that the Court deny Plaintiff's motion for a preliminary injunction.

Dated: this 9th day of April, 2007                Respectfully submitted,


By:_____/s/ Peter J. Petesch_____
     Peter J. Petesch, DC Bar No. 405639
     Kevin M. Kraham, DC Bar No. 459077
     FORD & HARRISON LLP
     1300 19th Street, N.W., Suite 700
     Washington, DC  20036
     Tel  (202) 719-2000
     Fax  (202) 719-2077

*Attorneys for Defendant Roland A. Labine*

_____

     Elliott S. Martin
     LAW OFFICE OF ELLIOTT S. MARTIN
     16 Court Street, Suite 2304
     Brooklyn, New York  11241
     Tel  (718) 855-0400
     Fax  (718) 858-2101

*Of Counsel*

DC:65525.1

# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RESTORE MEDIA, LLC,

     Plaintiff,

v.

ROLAND A. LABINE, *et al.*,

     Defendants.

Civil Action No. 07-573 (RJL)

## <u>DECLARATION OF ROLAND A. LABINE</u>

I, Roland A. Labine, make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746:

1)     I am over eighteen (18) years of age, have personal knowledge of the facts set forth herein, am competent to so testify, and state that said facts are true. I live and work in Brooklyn, New York with a residence and home office at 199 Berkeley Place, Brooklyn, New York 11217.

2)     For the last thirty-five (35) or so years, since 1972, I have worked in the media field relating to traditional homes, old houses, historic preservation and traditional architecture. From 1987 to 2002 I developed and built up two (2) publications, "Clem Labine's Traditional Building" and Clem Labine's Period Homes". I also launched two (2) websites, "traditional-building.com" and "period-homes.com" which essentially were only adjuncts to the magazines, and were not independently profitable. On March 1, 2002, I sold the two (2) magazines and websites to Plaintiff, Restore Media, LLC ("Restore"). I stayed on as a manager of the Brooklyn office until July 31, 2006. Both Restore and I had counsel to advise us in the transaction and the contract was actually executed in my office in Brooklyn with all sides at the same table.

3)    The magazines and websites which were conveyed to Restore in 2002 were all produced out of my office located in a building I owned at 69A Seventh Avenue, Brooklyn, New York. Restore continued operating from this location from March 2002 until late February 2007. At that point, with its Lease expiring, it moved its operation to 45 Main Street, Brooklyn, New York. To the best of my belief, Restore's New York offices have approximately sixteen (16) employees; all of the creative work in laying out the magazines and the preponderance of the sales activities of the two (2) magazines and websites are performed out of the New York office.

4)    In early 2007 I began preliminary discussions with co-Defendant John M. Corbett, Jr. ("Corbett") with an eye to possibly developing a website which would in certain ways overlap with that of Restore's (TradWeb Services directory.com).  My understanding is that anti-competitive covenants against a former employee are strongly discouraged by the Courts and unenforceable unless they involve conduct which the Courts construe as providing an unfair competitive advantage to the former employee.

5)    I possess no commercial information proprietary to Restore. Any necessary information concerning vendors or customers is readily obtainable on the internet or through perusal of trade magazines. If Restore is in possession of trade secrets I certainly am not aware of them.

6)    Plaintiff's Complaint states (at Paragraph 8) that "...the claims in this lawsuit arise from Defendants' actions in the District of Columbia". I assure this Court that since I left I never did anything whatsoever in the District of Columbia relating to Restore or any possible business venture with Corbett or otherwise connected to the historic restoration market.  Any conversations that I had with Corbett took place in Brooklyn, as did any correspondence that I transmitted.  In Paragraph 9 of Plaintiff's Complaint, there is an allegation which refers to

"events or omissions giving rise to the claim"; I submit that I have neither committed any acts nor failed to act in any way which would cause cognizable harm to Plaintiff; however, any conduct which might have conceivably come under that category occurred in New York. I have no purposeful contacts with the District of Columbia whatsoever.

7)    After Restore's purchase of my magazines and websites in March 2002, I stayed on as founder and sales manager of the two (2) magazines and two (2) websites, working out of my Brooklyn, New York office. This constituted the bulk of my duties at Restore until I left in July 2006. Over the last eight (8) or nine (9) months of my tenure at Restore, I did some work on what Plaintiff's Complaint refers to as the "TradWebDirectory.com" website (hereinafter "TradWeb"). While it was not the focus of my efforts, it was certainly something that I devoted time to over that period. However, Plaintiff's Complaint is somewhat mystifying when it states (at Paragraph 22) that I was "privy to all of Restore Media's confidential and proprietary plans for launching TradWebDirectory.com including, but not limited to its market strategy, pricing and philosophy, and Restore Media's database of customers and providers." Unfortunately, this allegation is as incorrect and misleading as it is broad.

8)    If Restore had a particular "market strategy, pricing, and philosophy" behind TradWeb I never was aware of it. Its goal (like pretty much everyone else who starts a commercial website) was to make money and I imagine its generalized strategy was to increase advertising revenue (again which is a standard way to accomplish that goal). I did make two (2) suggestions to Restore to further this "strategy": To list vendors for free but to charge a premium for an expanded text listing and to offer a service by which the vendor could provide the internet consumer an opportunity to click on the screen and see a pictorial image of the vendor's work. TradWeb did not actually exist until John Corbett put up a version on the internet in June 2006.

3

These sales concepts are hardly unique or proprietary. Nor for that matter is Restore's database of customers and providers. These individual companies and concerns are easily discoverable on the internet or by scanning trade magazines. This is how I developed a database which was conveyed to Restore along with the primary assets in the form of the two (2) magazines. This "strategy" does not require specialized gifts, and can be replicated by anybody who is willing to spend what is not an extraordinary amount of time. Regarding "pricing" of the text listing, I did make suggestions on that score to Restore sometime shortly before I left, but I do not know whether these suggestions were accepted or rejected. The "TradWebDirectory.com" website was commercially launched sometime in 2006 after I left Restore and I know very little about how it has worked out and to what extent it has been successful. I do know that Restore established its initial sales quota for its TradWeb sales staff only in early 2007 (six (6) months after I left). I learned of this from certain of Restore's sales staff who reached out to me asking for help in devising strategies to meet that quota. Apparently, Restore imparted no coherent marketing strategy to these people from its headquarters in Washington. This seems to refute Plaintiff's claim that there was a proprietary sales strategy in place as of July 2006 which I should be restrained from utilizing.

9)    My primary contribution to TradWeb was to organize product listings into categories and write short descriptions of each. Annexed hereto as Exhibit A is a printout of all of the different categories of vendors which appear on the TradWeb website. I hope and believe my prose is serviceable but none of the descriptions are in any way proprietary. I respectfully refer the Court to the site of one of Restore's competitors, "OldHouseWeb" where many of the same categories are described in much the same way. If I were to decide to establish a website which overlaps with TradWeb I would be bringing to the venture nothing which in any

conceivable way should "belong to" Restore. By virtue of spending some time on his or her

computer, anyone sitting anywhere in the world could simply replicate the basic information on

the Restore website, or for that matter the OldHouse website, including its vendor listings. I

respectfully suggest to this Court that there is nothing remotely unfair about my initiating such a

venture.

      10)    In January 2007, I sent a letter regarding some potential personal plans for a new

business. However, it was not a mass-mailing directed to "Restore's clients" *per se*, but to

eighty-seven (87) friends with whom I had established relationships over my thirty-five (35)

years in the field. I did <u>not</u> utilize any Restore database in the dissemination of this

communication. The history of this letter is simple. It came to my attention that individuals at

Restore were telling contacts that I had retired from the industry when I left Restore in July 2006.

Since that was not true, I sent a letter to some personal contacts who I had developed. There is

nothing negative about Restore in this letter.

      11)    For what it is worth, I did leave Restore under less than cordial terms, although

this did not have anything directly to do with me. In July 2006, it was my perception that one of

the salespeople there who had left was not given a fair shake on commissions; I was upset about

that and resigned as a result. I believe that Mr. Corbett, too, believes he has reasons to feel

mistreated by Mr. Tucker (which reasons I find understandable), but this has nothing to do with

my right to earn a living. The reference to Mr. Tucker in my private letter to Mr. Corbett was a

small joke but my feelings towards him played no part in the potential commencement of my

venture with Mr. Corbett. I have some negative feelings towards Mr. Tucker for reasons which I

feel are sufficient. However, any planned venture would be driven only by a desire to make

money. I would not spend thirty-five cents (.35¢) solely to make Mr. Tucker uneasy, much less

provide a grant of $3,500.00 to Mr. Corbett. Any competition which we might offer to Restore would be of the sort offered by any competing business in our free capitalist society.[1]

12)    Plaintiff's papers raise the issue of Restore databases being placed on my home computer. This did not occur when I left in July 2006 but while I was still working for Restore. This was not done by myself nor done at my request; when I gave notice in July 2006 to Restore there was a transition period where I still did some work on TradWeb. Dorian Haneo, an IT consultant with Restore put this information on hard drive to allow me to work on TradWeb from my home during that final period. I never used it except to further the purposes of Restore; likewise, I never needed it subsequently and was more than happy to have Dorian take it off on April 4, 2007 after my attorney and Plaintiff's Counsel discussed the matter.

13)    Restore is a Limited Liability Company with a number of principals. It is my understanding that Robert Fox, a national sales manager, is a member of the company and resides in the State of New York.

14)    I respectfully advise the Court that Restore was supposed to pay the sum of $100,000.00 to complete the purchase by March 1, 2003. It eventually paid only $62,500.00; leaving a shortfall of $37,500.00 still owing. I do not think that it is fair for the Plaintiff to seek relief in a Court of Equity when it has not lived up to its own legal obligations.

---

[1] The letter which Plaintiff places in its Court papers was a private communication to Mr. Corbett which, as far as I know, was retained only by him and at my office at 69A Seventh Avenue. I retained an office in that building even after I left Restore in July 2006 (I own the building).

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 6th day of April, 2007, in Brooklyn, New York.

/s/
ROLAND A. LABINE

# Exhibit A







TIMBERLANE
Exterior Shutters & Shutter Hardware
**CLICK HERE** *for your free catalog.*

Search Again
By Category
& Location

...or Search
by Keyword

[  ] Search

Where do you Rock?

ELDORADO STONE
A HEADWATERS COMPANY

www.eldoradostone.com

Send us your feedback
about errors in this
Directory.

Contact Our
Display Ad
Sales Team

**Continue your search by clicking on any of the Building Arts Specialties listed below:**

Div. 1 -- ARCHITECTURAL SALVAGE & RECYCLED BUILDING MATERIALS
Div. 2 -- ARCHITECTURE & DESIGN SERVICES
Div. 3 -- ART GLASS, MURALS, MOSAICS, SCULPTURE, ARTWORK
Div. 4 -- COLUMNS, CAPITALS & BALUSTRADES
Div. 5 -- CONSERVATION SERVICES (see also specific product sections)
Div. 6 -- CONSULTING, RESEARCH, PLANNING & DOCUMENTATION SERVICES (see also relevant product areas)
Div. 7 -- CONTRACTING, CONSTRUCTION & ENGINEERING SERVICES (see also appropriate product sections)
Div. 8 -- DOORS, WINDOWS, GLAZING, SHUTTERS
Div. 9 -- EDUCATION & CRAFT TRAINING
Div. 10 -- FLOORING
Div. 11 -- FURNITURE, FIXTURES, FITTINGS & LIFTING SYSTEMS
Div. 12 -- HARDWARE
Div. 13 -- KITCHENS & BATHROOMS
Div. 14 -- LANDSCAPES, PARKS, GARDENS & STREETSCAPES
Div. 15 -- LIGHTING & ELECTRICAL SYSTEMS
Div. 16 -- MANTELS, FIREPLACES & CHIMNEYS
Div. 17 -- MASONRY, STONE, BRICKWORK, TERRA COTTA
Div. 18 -- MOLDED & CAST ORNAMENT
Div. 19 -- ORNAMENTAL METALWORK
Div. 20 -- PLUMBING, HEATING & COOLING SYSTEMS
Div. 21 -- PRESERVATION & PROFESSIONAL NON-PROFIT ORGANIZATIONS
Div. 22 -- ROOFING, SIDING, ROOF SPECIALTIES
Div. 23 -- SPECIAL CONSTRUCTION: CONSERVATORIES, GAZEBOS, TIMBER FRAMES, BARNS, ETC.
Div. 24 -- SPECIALTIES: SIGNAGE, CUPOLAS, WEATHERVANES, etc.
Div. 25 -- TOOLS & EQUIPMENT
Div. 26 -- MATERIALS FOR WALLS & CEILINGS
Div. 27 -- WOODWORK, MOLDINGS, TURNINGS, STAIRS, MILLWORK
Div. 28 -- OTHER PROFESSIONAL SERVICES

**Section**
**Div. 1 -- ARCHITECTURAL SALVAGE & RECYCLED BUILDING MATERIALS**

Art Glass, Antique
Artwork, Antique
Barn Siding, Antique

Barns, Salvaged
Bars & Back Bars, Antique
Bath Fixtures, Antique
Bath Tubs, Antique
Bells, Salvaged
Benches, Antique
Boards, Antique
Brick, Salvaged
Building Components, Salvaged
Ceiling Tin, Salvaged
Ceramic Tile, Antique
Chimney Pots, Antique
Church & Ecclesiastical Elements, Salvaged
Columns, Salvaged
Doors, Salvaged
Elevators, Antique
Faucets, Salvaged
Fencing, Salvaged
Fireplace Accessories, Antique
Fireplace Surrounds, Antique
Floor Registers, Salvaged
Flooring, Stone -- Salvaged
Flooring, Tile -- Salvaged
Flooring, Wood Parquet -- Salvaged
Flooring, Wood Plank -- Salvaged
Fountains, Salvaged
Furniture, Antique
Garden Furniture, Antique
Garden Ornament -- Antique
Gargoyles -- Salvaged
Hardware, Door -- Antique
Hardware, Furniture -- Antique
Hardware, Window -- Antique
Ironwork, Salvaged
Lighting, Exterior, Antique
Lighting, Interior, Antique
Log Houses, Salvaged
Mantels, Antique
Mirrors, Antique
Paneling, Antique
Plumbing Fixtures, Antique
Porch Furniture, Antique
Radiators, Salvaged
Roofing Slate, Salvaged
Roofing Tile, Salvaged
Shutters, Salvaged
Siding, Salvaged
Sinks, Bathroom -- Salvaged
Sinks, Kitchen -- Salvaged
Stained Glass, Antique
Stair Parts, Salvaged
Statuary, Antique
Stone, Salvaged
Storefronts, Salvaged
Stoves, Cooking -- Antique
Stoves, Heating -- Antique
Street Furnishings, Antique
Terra Cotta, Salvaged
Timbers, Salvaged
Toilets, Antique
Tools, Antique
Weathervanes, Antique
Window Glass, Antique
Windows, Salvaged
Woodwork, Salvaged

**Back to top**

**Section**
**Div. 2 -- ARCHITECTURE & DESIGN SERVICES**

Architects -- Arts & Crafts Design
Architects -- Classical Design
Architects -- Colonial & Early American Design
Architects -- Commercial Restoration & Renovation
Architects -- Commercial, New Design
Architects -- Cultural Institutions Restoration & Renovation
Architects -- Cultural Institutions, New Design
Architects -- Government Facilities Restoration & Renovation
Architects -- Government Facilities, New Design
Architects -- Hospitality Facilities, New Design
Architects -- Hospitality Facilities, Restoration & Renovation
Architects -- Institutional Restoration & Renovation
Architects -- Institutional, New Design
Architects -- New Urbanist Planning & Design
Architects -- Preservation
Architects -- Religious Buildings Restoration & Renovation
Architects -- Religious Buildings, New Design
Architects -- Residential Restoration & Renovation
Architects -- Residential, New Design
Architects -- Theater Restoration & Renovation
Architects -- Theaters, New Design
Bathroom Design
Garden Design
Interior Design -- Traditional
Kitchen Design
Landscape Architects
Project Design Management

**Back to top**

**Section**
**Div. 3 -- ART GLASS, MURALS, MOSAICS, SCULPTURE, ARTWORK**

Art Glass Restoration
Art Glass, Custom
Art Restoration -- see Div. 5
Bullseye Glass -- see Div. 8
Ecclesiastical Art, Custom
Frames -- see Picture Frames
Fresco Conservation & Restoration
Fresco Painting
Glass Bending -- see Div. 8
Glass Beveling, Custom
Glass Blowers
Glass Cut & Engraved, Custom
Glass Etching, Custom
Glass Fabrication
Glass Installers -- see Div. 8
House Renderings (see also Architectural Renderings)
Mosaic Conservation & Restoration
Mosaic Design & Creation (see also Div. 10)
Mosaic Installation
Mural Conservation & Restoration
Mural Painting
Picture Frame Gilders
Picture Frame Makers
Picture Frame Restoration
Sculptors
Sculpture Conservation
Sculpture Restoration
Sculpture, Custom Bronze
Sculpture, Custom Casting
Sculpture, Custom-Carved Stone
Sculpture, Custom-Carved Wood

Stained Glass Conservation & Restoration
Stained Glass Domes, Conservation & Restoration
Stained Glass Domes, Custom Creation
Stained Glass, Custom Creation
Trompe L'Oeil Painting -- see Div. 26
Upholstering Services

**Back to top**

Section
**Div. 4 -- COLUMNS, CAPITALS & BALUSTRADES**

Balustrades, Custom Cast Stone & Concrete
Balustrades, Custom Fiberglass
Balustrades, Custom Metal
Balustrades, Custom Polymer
Balustrades, Custom Polymer/Stone
Balustrades, Custom Stone
Balustrades, Custom Wood
Balustrades, Other Custom
Capitals, Custom Carved Stone
Capitals, Custom Carved Wood
Capitals, Custom Cast Gypsum & Plaster
Capitals, Custom Molded
Capitals, Other Custom
Column Restoration
Columns, Custom Cast Gypsum & Plaster
Columns, Custom Cast Stone & Concrete
Columns, Custom Fiberglass
Columns, Custom Metal
Columns, Custom Polymer
Columns, Custom Polymer/Stone
Columns, Custom Stone
Columns, Custom Wood
Columns, Other Custom
Porch Posts -- see Div. 27

**Back to top**

Section
**Div. 5 -- CONSERVATION SERVICES (see also specific product sections)**

Architectural Conservators
Architectural Materials Conservation
Artwork Conservation
Building Conservation
Cemetery Conservation
Fine Art Conservation -- see Artwork Conservation
Furniture Conservation
Glass Restoration -- see Div. 3
Gravesite Conservation -- see Cemetery Conservation
Monuments Conservation Services
Object Conservation
Porcelain & Glass Conservation
Textile Conservation & Restoration

**Back to top**

Section
**Div. 6 -- CONSULTING, RESEARCH, PLANNING & DOCUMENTATION SERVICES (see also relevant product areas)**

Adaptive Re-Use Planning & Consulting
Archeologists
Architectural Historians
Architectural Photogrammetry

Architectural Photography
Architectural Renderings (see also House Renderings)
Building Documentation (see also Measured Drawings)
Building Inspection -- see Conditions Surveys
Building Maintenance Planning -- see Maintenance Planning
Conditions Surveys
Cultural Resource Consulting
Economic Development
Environmental Consultants
HABS/HAER Consultants
Historic Preservation Consulting
Historic Research
Historic Structure Reports
House Inspection Services
Life Safety
Liturgical Art & Architecture Consulting
Maintenance Planning
Masonry Consultants
Measured Drawings
Museum Consultants
Paint Color Analysis -- see Div. 26
Paint Color Consulting -- see Div. 26
Photography
Preservation Consulting
Preservation Planning
Safety Consultants
Specification Consultants
Specification Writing
Tax Credit Planning
Town Planning -- see Urban Planning
Universal Access Consulting
Urban Planning
Website Design & Optimization

**Back to top**

**Section**
**Div. 7 -- CONTRACTING, CONSTRUCTION & ENGINEERING**
**SERVICES (see also appropriate product sections)**

3-D Scanning for CNC Production
Asbestos Abatement Contractors
Building Movers (see also House Movers)
Church Restoration
Construction Managers
Contractors -- Commercial Construction
Contractors -- Commercial Renovation
Contractors -- General
Contractors -- Residential Construction
Contractors -- Residential Restoration
Demolition Contractors
Engineers, HVAC Systems
Engineers, Structural
Hazardous Materials Abatement
House Movers (see also Building Movers)
Landscape Contractors
Lead Abatement Contractors
Mold Remediation Contractors
Smokestack Repair (see also Chimney Restoration)
Structural Repair Contractors
Waterjet Cutting Contracting

**Back to top**

**Section**
**Div. 8 -- DOORS, WINDOWS, GLAZING, SHUTTERS**

Art Glass -- see Div. 3
Awnings, Custom Fabric
Awnings, Custom Metal
Bronze Door Repair (see also Doors, Bronze)
Bullseye Glass, Custom
Door Restoration, Wood
Doors, Bronze -- Custom Fabrication
Doors, Bronze -- Restoration (see also Bronze Door Repair)
Doors, Carriage House -- Custom
Doors, Garage -- Custom
Doors, Metal -- Custom Fabrication
Doors, Metal -- Repair & Restoration
Doors, Screen -- Custom
Doors, Storm -- Custom
Doors, Wood -- Custom Carved
Doors, Wood -- Custom Fabrication
Doors, Wood -- Custom Fire-Rated
Doors, Wood -- Historic Replications
Entryways, Custom Metal
Entryways, Custom Wood
Epoxies, Custom -- see Div. 24
Glass Architectural, Custom Fabrication (see also Div. 3)
Glass Bending, Custom
Glass Blowers -- see Div. 3
Glass Fabrication -- see Div. 3
Glass Installers
Glass Structures -- see Div. 23
Glass, Door & Window -- Custom (see also Window Glass, Antique -- Div. 1)
Glass, Insulated Units, Custom
Sash -- see Window Sash
Shutter Restoration
Shutters, Custom Wood -- Exterior
Shutters, Custom Wood -- Interior
Skylights, Custom
Stained Glass -- see Div. 3
Steel & Metal Window Restoration
Storefronts -- see Div. 23
Weather-stripping Contractors
Window Installation
Window Reglazing
Window Restoration -- see window type
Window Sash, Custom Replication
Window Screens, Custom
Windows, Aluminum -- Custom
Windows, Aluminum -- Historic Replicas
Windows, Bronze -- Custom Fabrication
Windows, Metal -- Restoration
Windows, Steel -- Custom Fabrication
Windows, Steel -- Restoration
Windows, Storm -- Custom Inside-Mounting
Windows, Storm -- Custom Metal
Windows, Storm -- Custom Outside-Mounting
Windows, Storm -- Custom Wood
Windows, Wood -- Custom Fabrication
Windows, Wood -- Historic Replication
Windows, Wood -- Restoration

**Back to top**

**Section**
**Div. 9 -- EDUCATION & CRAFT TRAINING**

Brick Crafts Classes
Building Maintenance Courses
Business Side of Preservation Courses
Cabinetmaking Classes

Carpentry Classes
Classical Architecture Classes
Decorative Finishes Conservation Courses
Decorative Painting Classes
Degree-Granting Institutions
Faux Finishing Classes
Lime Mortar Classes
Masonry Restoration Classes
Masonry Trades Classes
Model-Making Classes
Mold-Making Classes
Ornamental Plaster Classes
Plaster Restoration Classes
Preservation Education -- General
Preservation Principles Courses
Preservation Trades Education
Repointing Workshops
Roof Flashing Workshops
Sculpture Classes
Slate Roof Repair Workshops
Stenciling Classes
Stone Carving Classes
Stone Masonry Conservation
Stone Masonry Training
Stone Wall Building Classes
Stone Wall Repair Classes
Structural Evaluation Courses
Timber Frame Restoration Workshops
Timber Framing Classes
Window Repair Classes
Wood Carving Classes
Woodworking Classes

**Back to top**

**Section
Div. 10 -- FLOORING**

Antique Wood Floors -- see Div. 1
Carpet, Custom Duplication & Production
Ceramic Tile -- see Div. 26
Concrete Floors, Custom
Floorcloths, Custom
Marble Floor Installation
Marble Floor Restoration
Marquetry Floors -- see Wood Flooring
Mosaic Borders & Floors, Custom Stone (see also Div. 3)
Mosaic Borders, Wood -- see Wood Flooring
Parquet -- see Wood Flooring
Paver Tile, Custom
Pavers, Custom Concrete
Registers -- see Div. 20
Rugs -- see Carpet
Stone Floor Installation
Stone Floor Restoration
Stone Flooring, Custom Fabrication
Terrazzo Floor Installation
Terrazzo Floor Restoration
Terrazzo Floor Specifications
Tile Floor Installation
Tile Flooring, Custom Production
Wood Floor Installation
Wood Floor Refinishing
Wood Floor Repair
Wood Flooring, Custom Border Installation
Wood Flooring, Custom Border Manufacture
Wood Flooring, Custom Hardwood Strip

Wood Flooring, Custom Marquetry Manufacture
Wood Flooring, Custom Parquet Manufacture
Wood Flooring, Custom Wide Plank Installation
Wood Flooring, Custom Wide Plank Manufacture
Wood Flooring, Custom Wide Plank Restoration
Wood Flooring, Custom Wood Mosaic
Wood Flooring, Marquetry Installation
Wood Flooring, Marquetry Restoration
Wood Flooring, Parquet Installation
Wood Flooring, Parquet Restoration

**Back to top**

**Section**
**Div. 11 -- FURNITURE, FIXTURES, FITTINGS & LIFTING SYSTEMS**

Arts & Crafts Furniture, Custom
Bars & Back Bars, Custom
Cabinetry -- see Div. 27
Clock Repair
Clocks, Custom (see also Street Clocks; Tower Clocks -- Div. 14
Dumbwaiter Repair
Dumbwaiter Systems, Custom
Ecclesiastical Furnishings, Custom
Elevator Installation
Elevator Repair & Restoration
Elevator Systems, Custom Commercial
Elevator Systems, Custom Residential
Fabric Conservation -- see Textile Conservation
Fabrics, Custom Replication
Furnishings, Custom
Furniture Refinishing
Furniture Restoration & Repair
Furniture, Antique -- see Div. 1
Furniture, Custom
Garden Furniture -- see Div. 14
Kitchen Cabinets -- see Div. 13
Lift Systems, Custom
Musical Instrument Restoration
Pews, Custom (see also Ecclesiastical Furnishings)
Porch Furniture, Custom
Street Furnishings -- see Div. 14
Textile Conservation
Trunk Restoration & Repair
Upholstering, Furniture
Window Hangings & Treatments, Custom

**Back to top**

**Section**
**Div. 12 -- HARDWARE**

Alarm Systems -- see Security Systems
Barn Door Hardware, Custom
Cabinet Hardware, Custom Casting
Cabinet Hardware, Custom Duplication
Cabinet Hardware, Custom Forging
Carriage House Doors - see Doors, Carriage House
Door Hardware, Custom Casting
Door Hardware, Custom Duplication
Door Hardware, Custom Forging
Furniture Hardware, Custom Casting
Furniture Hardware, Custom Forging
Garage Door Hardware, Custom
Garage Doors, Custom
Gate Hardware, Custom
Gate Operators, Custom Systems

Hardware Consultants
Hardware Repair & Restoration
Hardware Replating
Hardware, Antique -- see Div. 1
Locksmiths
Security Systems -- see Div. 25
Shutter Hardware, Custom Casting
Shutter Hardware, Custom Duplication
Shutter Hardware, Custom Forging
Window Hardware, Custom Casting
Window Hardware, Custom Duplication
Window Hardware, Custom Forging

**Back to top**

**Section**
**Div. 13 -- KITCHENS & BATHROOMS**

Appliance Repair
Bath Tubs, Custom Ceramic
Bath Tubs, Custom Metal
Bath Tubs, Custom Porcelain
Bath Tubs, Custom Stone
Bath Tubs, Other Custom
Bathroom Cabinetry, Custom
Bathroom Design -- see Div. 2
Countertops, Custom Ceramic
Countertops, Custom Concrete
Countertops, Custom Stone
Countertops, Custom Wood
Countertops, Other Custom
Faucet Repair & Restoration
Faucets, Custom
Kitchen Cabinets, Custom
Kitchen Design -- see Div. 2
Plumbing Fixtures -- see Div. 20
Porcelain Surface Restoration
Shower Accessories, Custom
Showers, Custom
Sinks, Custom Ceramic
Sinks, Custom Metal
Sinks, Custom Porcelain
Sinks, Custom Stone
Sinks, Other Custom
Stoves, Cooking -- Antique -- see Div. 1
Wine Cellars, Custom
Wine Racks, Custom

**Back to top**

**Section**
**Div. 14 -- LANDSCAPES, PARKS, GARDENS & STREETSCAPES**

Arbors, Custom
Benches, Custom
Bridges -- see Div. 23
Fences, Custom Metal
Fences, Custom Wood
Fences, Other Custom
Flagpole Painting
Flagpoles, Custom
Fountains, Carved Stone
Fountains, Custom Cast Stone
Fountains, Custom Fiberglass
Fountains, Custom Metal
Fountains, Garden -- Custom
Fountains, Public -- Custom

Garden Design -- see Div. 2
Garden Furniture, Custom (see also Porch Furniture -- Div. 11)
Garden Lighting Installation
Garden Lighting, Custom Systems
Garden Ornament, Custom
Garden Sculpture, Custom
Gates, Custom Metal
Gates, Custom Wood
Gates, Other Custom
Gazebos -- see Div. 23
Kiosks -- see Div. 23
Landscape Contractors - see Div. 7
Landscape Design -- see Div. 2
Landscape Lighting Installation
Landscape Lighting, Custom Systems
Landscape Stone
Paver Brick -- see Div. 17
Pavers, Custom Concrete
Pavers, Custom Tile (see also Div. 10)
Pergolas -- see Arbors
Planters, Custom
Plaques -- see Div. 24
Ponds -- see Water Features
Retaining Walls, Custom (see also Stone Walls)
Signmakers -- see Div. 24
Site Amenities, Custom (see also Street Furnishings)
Stone Walls -- see Div. 17
Street Clock Restoration
Street Clocks, Custom
Street Furnishings, Custom (see also Site Amenities)
Street Lighting -- see Div. 15
Tower Clock Repair & Restoration
Tower Clocks, Custom
Urns -- see Planters
Water Features, Custom
Waterfalls, Custom

**Back to top**

**Section**
**Div. 15 -- LIGHTING & ELECTRICAL SYSTEMS**

Alarm Systems -- see Security Systems
Antique Lighting -- see Div. 1
Chandeliers, Custom
Electrical Contractors
Fan Repair
Fans, Ceiling -- Custom
Garden Lighting -- see Div. 14
Gas-Burning Lighting, Custom
Glass Bending -- see Div. 8
Lamp Posts, Custom
Lamp Shades, Custom
Landscape Lighting -- see Div. 14
Lanterns, Exterior -- Custom Fabrication
Lanterns, Interior -- Custom Fabrication
Lighting Consultants
Lighting Fixture Fabrication, Custom
Lighting Fixture Restoration & Repair
Lighting Fixtures, Custom Historic Replication
Lighting Glass, Custom
Lighting System Design, Exterior Non-Residential
Lighting System Design, Exterior Residential
Lighting System Design, Interior Non-Residential
Lighting System Design, Interior Residential
Lighting System Design, Liturgical
Lightning Protection -- see Div. 22

Postlights, Custom
Street Lighting, Custom

**Back to top**

**Section**
**Div. 16 -- MANTELS, FIREPLACES & CHIMNEYS**

Chimney Construction
Chimney Liners, Custom-Tailored Systems
Chimney Lining Contractors
Chimney Pots, Custom
Chimney Restoration (see also Smokestack Repair -- Div. 7)
Fireplace Accessories, Custom
Fireplace Restoration
Fireplace Tile, Custom
Fireplaces, Custom Design & Installation
Fireplaces, Custom Stone
Fireplaces, Rumford -- Custom
Mantels, Antique -- see Div. 1
Mantels, Custom Carved Stone
Mantels, Custom Carved Wood
Mantels, Custom Cast Gypsum & Plaster
Mantels, Custom Cast Stone
Mantels, Custom Stone
Mantels, Custom Wood

**Back to top**

**Section**
**Div. 17 -- MASONRY, STONE, BRICKWORK, TERRA COTTA**

Brick Cleaning & Restoration (see also Concrete Cleaning; Stone Cleaning)
Brick Colorants, Custom Formulations
Brick Conservation & Consulting
Brick Engraving
Brick Masons
Brick Pavers, Custom
Brick, Antique Clinker (see also Div. 1)
Brick, Custom Shapes & Colors
Brick, Handmade
Brick, Salvaged -- see Div. 1
Bricklayers
Cast Stone -- see Div. 18
Caulking -- see Waterproofing Contractors
Chimneys -- see Div. 16
Concrete Cleaning (see also Brick Cleaning; Stone Cleaning)
Concrete Contractors
Concrete Restoration
Exterior Restoration -- see Facade Restoration
Facade Restoration
Landscape Stone -- see Div. 14
Marble Cleaning
Marble Restoration (see also Div. 10)
Marble, Custom-Cut Elements
Masonry Anchoring Systems, Custom
Masonry Cleaners, Custom Formulations
Masonry Cleaning (see also Brick Cleaning)
Masonry Color Blending Contractors
Masonry Conservators & Consultants
Masonry Contractors (see also Bricklayers)
Masonry Paint Strippers -- Custom Formulations
Masonry Paint Stripping Contractors
Masonry Repair & Restoration
Masonry Tools -- see Div. 25
Masonry Waterproofing (see also Waterproofing Contractors)
Mortar Analysis Services

Select Service/Product Category                http://restorationandbuildingservices.com/pages.php?which_page=allca

Mortar, Custom Colors
Mortar, Custom Formulations
Mortar, Custom Matching Services
Paint Removal -- see Masonry Paint Stripping; see also Div. 26
Pointing -- see Tuckpointing
Precast Concrete -- see Cast Stone in Div. 18
Quarries, Custom -- see Stone Quarries
Repointing -- see Tuckpointing
Stone Analysis & Identification
Stone Carving
Stone Carving Tools -- see Div. 25
Stone Conservators & Consultants
Stone Fabrication, Custom
Stone Lettering, Custom Carving
Stone Quarries
Stone Repair Mortars, Custom Blends
Stone Restoration Contracting
Stone Setters & Masons
Stone Turnings, Custom
Stone Wall Construction
Stone, Custom Dimensional
Stone, Custom Turnings (see Stone Turnings)
Stone, Salvaged -- see Div. 1
Stucco Application Contractors
Stucco Materials, Custom Formulations
Stucco Repairs
Terra Cotta Repair Contracting
Terra Cotta Repair Mortars, Custom Blends
Terra Cotta Replica Materials, Custom Elements
Terra Cotta, Custom Production
Terra Cotta, Installation Contractors
Terrazzo Installation
Terrazzo Repairs & Restoration
Tuckpointing
Waterproofing Contractors (see also Masonry Waterproofing)

**Back to top**

**Section
Div. 18 -- MOLDED & CAST ORNAMENT**

Architectural Fiberglass -- see Fiberglass
Balustrades -- see Div. 4
Capitals -- see Div. 4
Cast Stone Elements, Custom
Casting Materials, Custom Formulations
Casting Technology & Consulting Services
Ceiling Ornament -- see Div. 26
Columns -- see Div. 4
Composites, Custom Casting
Cornices, Exterior Fiberglass -- Custom
Cornices, Exterior Polymer -- Custom
Cornices, Exterior Sheetmetal -- see Div. 19, Div. 22
Cornices, Exterior Wood -- see Div. 27
Fiberglass, Custom Molding
Foam Cutting
Foamed Polymer Shapes, Custom
GFRC Custom Casting
GRG Custom Casting
Hot-Wire Foam Cutting
Mantels -- see Div. 16
Model Making for Castings; see also Div. 28
Modified-Gypsum Casting Materials
Modified-Gypsum Casting Technology
Mold-Making Materials, Custom Formulations
Mold-Making Services
Moldings, Custom FRP Fiberglass

Moldings, Custom GFRC
Moldings, Custom Gypsum
Moldings, Custom Plaster
Moldings, Custom Polymer-Modified GRG Gypsum
Moldings, Custom PVC
Moldings, Custom Urethane Foam
Moldings, Custom Urethane--Solid
Plaster Casting, Custom
Precast Concrete -- see Cast Stone
Stairs, Cast Stone -- Custom
Terra Cotta -- see Div. 17

**Back to top**

**Section
Div. 19 -- ORNAMENTAL METALWORK**

Aluminum Foundries
Aluminum, Custom Casting
Antique Metalwork -- see Div. 1
Brass, Custom Casting
Bronze Foundries
Bronze, Custom Casting
Cast Iron Foundries
Cast Iron Repairs
Cast Iron, Custom Castings
Coppersmiths (see also Sheetmetal Ornament)
Cornices, Custom Sheetmetal (see also Div. 22, Div. 27)
Cresting -- see Div. 22
Decorative Metal Panels -- see Embossed Metal; Perforated Metal
Embossed Metal, Custom
Extruded Metal, Custom
Fabrications -- see Metal Fabrication
Fences, Custom -- see Div. 14
Finials, Custom
Flashing -- see Sheetmetal Contractors
Forged Hardware -- see Div. 12
Forged Metalwork Installation
Forged Metalwork Repairs
Forged Metalwork, Custom Fabrication
Gates, Custom -- see Div. 14
Grilles - see Div. 20
Handrails, Custom Metal (see also Railings, Custom Metal)
Hardware, Custom Metal -- see Div. 12
Iron Foundries -- see Cast Iron
Iron, Custom Casting -- see Cast Iron
Louvers -- see Vents
Metal Casting -- Custom
Metal Coatings -- see Patinas
Metal Fabrications, Custom
Metal Plating
Metal Polishing
Metal Refinishing Services
Metalwork Repairs & Restoration
Model Making for Castings -- see Div. 18
Ornamental Metal Fabricators
Patinas, Metal -- Custom Formulations
Perforated Metal, Custom
Railings, Custom Metal Fabrication (see also Handrails, Custom Metal)
Railings, Metal -- Installation
Registers, Metal -- see Div. 20
Salvaged Metalwork -- see Div. 1
Sheetmetal Contractors
Sheetmetal Ornament Installation
Sheetmetal Ornament, Custom
Stairs, Custom Metal -- see Div. 27
Tin Ceilings -- see Div. 26

Tinsmiths -- see Sheetmetal Ornament
Vents -- see Div. 22
Waterjet Cutting -- see Div. 7
Weathervanes -- see Div. 24
Welding Services
Wrought Iron -- see Forged Metalwork

**Back to top**

**Section**
**Div. 20 -- PLUMBING, HEATING & COOLING SYSTEMS**

Bathroom Fixtures -- see Div. 13
Faucets -- see Div. 13
Fountains -- see Div. 14
Grilles, Custom Metal
Grilles, Custom Wood
Heating Stove Repairs
Heating Stoves, Antique -- see Div. 1
Heating System Contractors
HVAC System Design
HVAC System Installation
Plumbing Contractors
Plumbing Fixture Repair & Restoration
Plumbing Fixtures, Antique -- see Div. 1
Plumbing Fixtures, Custom (see also Div. 13)
Radiant Floor Heating, Custom
Radiator Cabinets, Custom
Radiators, Salvaged -- see Div. 1
Registers, Custom Metal
Registers, Custom Wood
Stove Restoration -- see Heating Stove Repairs
Vents -- see Div. 22

**Back to top**

**Section**
**Div. 21 -- PRESERVATION & PROFESSIONAL NON-PROFIT ORGANIZATIONS**

Preservation Organizations
Professional Associations
Trade Associations

**Back to top**

**Section**
**Div. 22 -- ROOFING, SIDING, ROOF SPECIALTIES**

Bird Control -- see Div. 24
Clapboards -- see Siding
Conductor Heads -- see Leader Boxes
Cornices, Exterior -- Custom (see also Div. 19, Div 27)
Cresting, Custom
Flashing -- see Sheetmetal Contractors, Div. 19
Gilding, Exterior -- see Div. 22
Gutters & Leaders, Custom Metal
Gutters, Custom Wood
Insulation Contractors
Leader Boxes, Custom
Lightning Protection Systems, Custom
Louvers -- see Vents
Metal Roofing Installation -- see Sheetmetal Roofing Installation
Metal Roofing Repair -- see Sheetmetal Roofing Repair
Metal Roofing, Custom Fabrication -- see Sheetmetal Roofing, Custom
Riggers (see also Steeplejacks)
Roofing Consultants

Roofing Contractors
Roofing Repair Contracting
Salvaged Roofing -- see Div. 1
Scuppers -- see Leader Boxes
Sheetmetal Ornament -- see Div. 19
Sheetmetal Roofing Installation
Sheetmetal Roofing Repair
Sheetmetal Roofing, Custom Fabrication
Siding Contractors
Siding Repair
Siding, Custom Fabrication
Siding, Custom Wood Clapboard
Siding, Custom Wood Shingles
Siding, Quartersawn Wood
Skylights, Custom -- see Div. 8
Slate Quarries
Slate Roofing Installation
Slate Roofing Repair
Slate Roofing, Custom-Matched Slates
Slate Roofing, Salvaged -- see Div. 1
Snow Guards, Custom
Thatch, Custom
Thatching Contractors
Tile Roofing Installation
Tile Roofing Repair
Tile Roofing, Custom Production
Tile Roofing, Custom-Matched Tiles
Tile Roofing, Salvaged -- see Div. 1
Vents, Custom
Waterproofing Contractors -- see Div. 17
Weathervanes -- see Div. 24
Wood Roofing Shakes, Custom
Wood Roofing Shingles, Custom

**Back to top**

**Section**
**Div. 23 -- SPECIAL CONSTRUCTION: CONSERVATORIES, GAZEBOS, TIMBER FRAMES, BARNS, ETC.**

Bandstands, Custom
Barn Construction
Barn Conversions
Barn Dismantling & Reassembly
Barn Moving
Barn Restoration
Bridge Construction, Timber
Bridge Restoration, Timber (see also Covered Bridge Restoration)
Bridges, Custom Ornamental
Bridges, Custom Pedestrian
Bridges, Custom Vehicular
Conservatories, Custom
Conservatory Restoration
Covered Bridge Restoration (see also Bridge Restoration, Timber)
Gazebos, Custom
Glass Structures, Custom
Greenhouse Restoration
Greenhouses, Custom
House Movers -- see Div. 7
Kiosks, Custom
Log House Construction
Log House Restoration
Outbuildings, Custom
Sawmills
Steeplejacks (see also Riggers)
Steeples, Custom
Storefronts, Custom Metal

Storefronts, Custom Wood
Timber Frame Construction
Timber Frame Planning, Design & Engineering
Timber Frame Restoration
Timbers, Custom Cut
Timbers, Salvaged -- see Div. 1

**Back to top**

**Section
Div. 24 -- SPECIALTIES: SIGNAGE, CUPOLAS, WEATHERVANES, etc.**

Auction Houses
Bell Hangers
Bell Repair & Restoration
Bells, Custom; see also Carillons
Bells, Salvaged -- see Div. 1
Bells, Tower -- Custom
Bird Control System Design
Bird Control System Installation
Bird Droppings Abatement
Book Publishers
Carillon Repair
Carillons, Custom; see also Bells
Clocks -- see Div. 11
Clocks, Street -- see Div. 14
Clocks, Tower -- see Div. 14
Cupolas, Custom Fiberglass
Cupolas, Custom Metal
Cupolas, Custom Wood
Epoxies, Custom Formulations
Markers -- see Plaques
Model Makers -- Architectural (see also Div. 18)
Periodical Publishers
Picture Frames -- see Div. 3
Plaques, Custom
Rare Book Dealers
Signmakers
Steeples -- see Div. 23
Tower Bells -- see Bells
Trade Shows & Exhibition Sponsors & Producers
Weathervanes, Custom

**Back to top**

**Section
Div. 25 -- TOOLS & EQUIPMENT**

Alarm Systems -- see Security Systems; Fire Protection
Crack Monitoring Systems
Crane Service
Decorating Tools
Electrolytic Corrosion Control
Fire Protection Systems
Humidity Measurement & Control Systems
Ladders, Custom
Masonry Tools
Moisture Meters
Moisture Monitoring Systems
Preservation Tools & Supplies
Roofing Tools
Scaffolding Systems, Custom
Security Systems, Custom
Stone Carving Tools

**Back to top**

**Section**
**Div. 26 -- MATERIALS FOR WALLS & CEILINGS**

Architectural Finish Conservation
Ceiling Domes, Custom
Ceiling Medallions, Custom Plaster & Gypsum
Ceiling Medallions, Custom Polymer & Composites
Ceiling Moldings, Custom
Ceilings, Custom Ornamental Metal
Ceilings, Custom Ornamental Plaster
Ceilings, Custom Ornamental Polymer Panels
Ceilings, Custom Ornamental Wood
Ceramic Tile Installation
Ceramic Tile, Custom Historic Replications
Ceramic Tile, Custom Production
Ceramic Tile, Hand-Painted
Cornice Moldings, Custom Plaster & Gypsum
Cornice Moldings, Custom Polymer & Composites
Decorative Arts Studios
Decorative Painting
Encaustic Tile, Custom Replication
Faux Finishes
Gilding, Exterior -- see Div. 22
Gilding, Interior
Glazing
Gold Leafing -- see Gilding
Graining; (see also Faux Finishes)
Marbleizing; (see also Faux Finishes)
Paint Analysis & Testing
Paint Color Consulting -- Exterior
Paint Color Consulting -- Interior
Paint Stripping Services (see also Wood Stripping in Div. 27)
Painted Finishes -- see Faux Finishes
Painting, Exterior
Painting, Interior (see also Decorative Painting)
Paints, Custom Blended
Plaster Analysis & Conservation
Plaster Consultants
Plaster Contractors -- Decorative
Plaster Contractors -- Flat Work
Plaster Ornament -- see Div. 18
Plaster Restoration
Relief Tile, Custom Production
Scagliola Installation
Scagliola Restoration
Stencil Patterns, Custom
Stenciling
Tin Ceiling Installation
Tin Ceilings, Custom Fabrication (see also Ceilings, Custom Ornamental Metal)
Trompe L'Oeil Painting
Venetian Plaster Contractors
Venetian Plaster, Custom Formulations
Wallpaper Conservation
Wallpaper Installation
Wallpaper, Custom Replication & Production
Wood Refinishing -- see Div. 27

**Back to top**

**Section**
**Div. 27 -- WOODWORK, MOLDINGS, TURNINGS, STAIRS, MILLWORK**

Antique Wood -- see Resawn Lumber
Architectural Fiberglass -- see Div. 18
Bars & Back Bars, Custom

Cabinetmakers
Carpenters, Restoration
Casework, Custom
Cornices, Exterior -- Custom Wood (see also Div. 18, Div. 19, Div. 22)
Epoxies, Custom -- see Div. 24
Fretwork -- see Gingerbread Ornament
Gingerbread Ornament, Custom
Kitchen Cabinets -- see Div. 13
Marquetry, Custom
Millwork, Custom Architectural -- Polymer
Millwork, Custom Architectural -- Wood
Moldings, Custom Wood
Moldings, Flexible -- Custom
Newel Posts, Custom
Paneling, Custom
Porch Posts, Custom
Railings, Custom Metal - Div. 19
Railings, Custom Wood
Resawn Lumber & Boards (see also Div. 1, Div. 10)
Salvaged Wood -- see Resawn Lumber
Shutters -- see Div. 8
Stair Parts, Custom Metal
Stair Parts, Custom Wood
Stairs, Cast Stone -- see Div. 18
Stairs, Custom Metal -- Curved
Stairs, Custom Metal -- Monumental
Stairs, Custom Metal -- Spiral
Stairs, Custom Metal -- Straight
Stairs, Custom Stone
Stairs, Custom Wood -- Curved
Stairs, Custom Wood -- Monumental
Stairs, Custom Wood -- Spiral
Stairs, Custom Wood -- Straight
Stairs, Other Custom
Timbers, Custom-Cut -- see Div. 23
Timbers, Salvaged -- see Div. 1
Turnings, Custom Wood
Victorian Gingerbread -- see Gingerbread
Wood Carvings -- Custom Machined
Wood Carvings -- Hand-Carved
Wood Refinishing
Wood Restoration
Wood Restoration Consulting
Wood Stripping (see also Paint Stripping in Div. 26)
Woodworkers -- see Cabinetmakers
Woodworkers -- see Carpenters

**Back to top**

**Section**
**Div. 28 -- OTHER PROFESSIONAL SERVICES**

Musical Instrument Restoration -- see Div. 11

**Back to top**

ALPHABETICAL INDEX OF CATEGORIES

Back to top

Traditional Building's Services Directory

Search Listings (HOME) | FREE Listing Sign Up | Priority Listing Sign Up
Listing Log In | Listing Support | Listing Terms and Conditions
Listing FAQ | Feedback/Contact Us | Display Ad Sales

Copyright 2007 Restore Media LLC. All Rights Reserved.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RESTORE MEDIA, LLC,

      Plaintiff,

v.

      Civil Action No. 07-573 (RJL)

ROLAND A. LABINE, *et al.*,

      Defendants.

## ORDER

Upon consideration of Plaintiff's Motion For Preliminary Injunction, Defendant Roland A. Labine's opposition thereto, any reply in support thereof, the entire record herein, and for good cause shown, it is this _____ day of _____, 2007, hereby:

**ORDERED** that Plaintiff's Motion is **DENIED**.

_____
RICHARD J. LEON
United States District Judge

DC:65526.1